THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LENNETT OAKLEY, Defendant-Appellant.

Second District   No. 2—97—0437

Opinion filed October 20, 1998.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a trial in the circuit court of Winnebago County, a jury found defendant, Lennett Oakley, guilty of home invasion (720 ILCS 5/12—11(a)(1) (West 1996)) and aggravated battery (720 ILCS 5/12—4(b)(1) (West 1996)). The trial court sentenced defendant to terms of imprisonment of six years for home invasion and two years for aggravated battery.

Defendant filed a timely notice of appeal. On appeal, the only issue that defendant raises is whether his conviction of home invasion was improper and must be reversed. Defendant asserts that his conviction of home invasion was improper and should be reversed because the State failed to establish one of the elements of the offense. Defendant claims the State failed to establish that he entered "the dwelling place of another" when he engaged in the purportedly criminal conduct. 720 ILCS 5/12—11(a) (West 1996).

The events that gave rise to the charges against defendant may be briefly summarized. Around 4 a.m. on September 20, 1996, without authority, defendant knowingly entered a house in Rockford, Illinois, that was the dwelling place of his former spouse, Beverly Johnson. Defendant had reason to know that one or more persons were present in the house because shortly before he entered the house, defendant had telephoned and spoken to Johnson, who was in the house at the time.

Defendant entered the house by breaking a basement window with a sledgehammer and then crawling into the basement through the broken window. Defendant brought the sledgehammer with him into the house. There, defendant encountered Johnson's boyfriend, Kenneth Reaves, and struck Reaves with the sledgehammer. A struggle between defendant and Reaves ensued. Johnson called the police, who quickly responded and arrested defendant. Evidence was presented at trial suggesting that defendant also had a knife with him when he entered the house.

At trial, Johnson's testimony included the following. The house that defendant entered was the former marital residence of Johnson and defendant. When defendant called Johnson at the house on the morning of September 20, 1996, he told her, "You need to get your company out of my house. I'll give you 5 to 10 minutes, or I will call

the police." Johnson was stunned by the call from defendant because she and defendant had not lived together in the house since December 1992. Johnson testified that her divorce from defendant had been finalized and that the divorce decree gave her possession of the house. Johnson acknowledged that defendant's name was still on the title to the house and on the mortgage papers for the house. Johnson testified that she was in the process of having defendant's name removed from the title to the house.

Defendant's testimony included the following. Although the divorce decree gave Johnson possession of the house, defendant went to the house nearly every day since he had stopped living in the house with Johnson. He went to the house to visit his daughters, ages 12 and 16 at the time, who lived in the house with Johnson. On the days when he went to the house, defendant arrived around 7 a.m. after Johnson left for work. After visiting his daughters, defendant slept in the house until it was time for him to go to work. Defendant usually started work about 2:30 p.m. According to defendant, he entered the house through a back door that was always unlocked.

Defendant acknowledged that he did not have Johnson's permission to be in the house during the day. However, defendant felt that he did not need Johnson's permission to be in the house when she was not there. Defendant also acknowledged that on at least one occasion Johnson discovered him in the house and told him to "get out of my house." On that occasion, defendant left because he did not want to cause trouble. However, defendant felt he had the right to be in the house.

Defendant further testified that his purpose in going to the house at 4 a.m. on the morning of September 20, 1996, was to get information about one of his daughters. He claimed that he had recently learned that the daughter had been raped, but that Johnson had not told him anything about it. Johnson testified that the incident involving the daughter had occurred about a year earlier. Defendant testified that he did not go to the house with the intention of hurting anyone.

On cross-examination, defendant acknowledged that the order finalizing his divorce from Johnson had been entered about six months prior to September 20, 1996. Defendant also acknowledged that the divorce decree gave Johnson exclusive possession of the house, all the equity in the house, and responsibility for all the debts related to the house. Nonetheless, defendant maintained that the house was his dwelling place "during the day" when Johnson was not there and when he was there to visit his daughters and to sleep.

On appeal, defendant contests only his conviction of home invasion. Defendant does not contest his conviction of aggravated battery.

Defendant asserts that the home invasion conviction was improper because when he entered the house on September 20, 1996, he did not enter "the dwelling place of another," an element of the crime of home invasion. 720 ILCS 5/12—11(a) (West 1996).

■ Section 12—11 of the Criminal Code of 1961 (720 ILCS 5/12—11 (West 1996)) sets out the elements of the crime of home invasion. Section 12—11 provides, in relevant part, as follows:

> "(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present or he or she knowingly enters the dwelling place of another and remains in such dwelling place until he or she knows or has reason to know that one or more persons is present and
>
> (1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or
>
> (2) Intentionally causes any injury to any person or persons within such dwelling place." 720 ILCS 5/12—11(a)(1), (a)(2) (West 1996).

Entry into "the dwelling place of another" is plainly an element of the crime of home invasion. In this case, defendant argues that his entry into his former marital residence was not an entry into "the dwelling place of another" because his name was on the title to the house and on the mortgage for the house.

In support of his position, defendant cites *People v. Reid*, 179 Ill. 2d 297 (1997), and *People v. Moulton*, 282 Ill. App. 3d 102 (1996). In *Moulton*, a recently divorced woman had exclusive possession of and was living in her former marital residence. The woman's ex-spouse, who retained joint title to the property, violated a plenary order of protection and invaded the former marital residence. The ex-spouse was charged with aggravated battery, criminal sexual assault, and home invasion. The trial court dismissed the home invasion charge on the ground that a joint owner of a dwelling place could not be charged with home invasion. *Moulton*, 282 Ill. App. 3d at 103-04.

On appeal, the Appellate Court, Third District, reviewed the legislative history of the home invasion statute and concluded that it showed that the legislature intended that the home invasion statute should not apply to cases of domestic violence involving married couples. *Moulton*, 282 Ill. App. 3d at 105-07. However, the court stated that it was unclear whether the home invasion statute was intended to apply in cases where the parties were recently divorced and the defendant retained an ownership, but not a possessory, interest in the

marital residence. Reasoning that criminal and penal statutes must be strictly construed and may not be extended in their application to cases that do not, by the strictest construction, come under their provisions, the court ruled that a joint tenant of property does not fall within the scope of the home invasion statute and affirmed the trial court's dismissal of the home invasion charge. *Moulton*, 282 Ill. App. 3d at 107.

In *Reid* the defendant was sentenced to death on the basis of his commission of a murder in the course of the felony of home invasion. The defendant had rented an apartment with the murder victim. The victim later obtained an order of protection that prohibited the defendant from entering the apartment unless the police were present. The defendant violated the protection order and entered the apartment, in which the victim continued to live, without the police being present. During an ensuing fight between the victim and the defendant in the apartment, the defendant murdered the victim.

Relying on *Moulton*, the defendant in *Reid* argued that his conduct did not fall within the scope of the home invasion statute. The State responded by arguing that the protection order, which granted the victim exclusive possession of the apartment, rendered the apartment the dwelling place of another for purposes of the home invasion statute. *Reid*, 179 Ill. 2d at 316. Our supreme court discussed *Moulton* and noted the legislative history of the home invasion statute. The court stated that the legislative history clearly showed that, in drafting the home invasion statute, the legislature "specifically sought to exclude domestic disputes from the reach of the statute." *Reid*, 179 Ill. 2d at 316. The court concluded that the defendant, as a joint renter of the apartment, did not enter the dwelling place of another when he entered the apartment, even if he violated a protection order in doing so. The court therefore held that the "defendant did not commit the offense of home invasion when he entered his own apartment." *Reid*, 179 Ill. 2d at 317.

In this case, like the defendants in *Reid* and *Moulton*, defendant contends that he did not enter the dwelling place of another and therefore did not commit home invasion when he entered his former marital residence on September 20, 1996. Defendant argues that because he was a joint tenant of the former marital residence and because his name appeared on the mortgage documents for the former marital residence, he did not enter the dwelling place of another.

Defendant's reliance on *Moulton* and *Reid* is unpersuasive. There are significant distinctions between this case and *Moulton* and *Reid*. In both *Moulton* and *Reid*, the defendant's ownership or lawful tenancy in the property had not been extinguished at the time each

entered the property in question. In *Moulton*, the divorce decree granted the wife exclusive possession of the marital residence only for a period of about two years, after which the marital residence was to be sold and the proceeds divided equally between the parties. *Moulton*, 282 Ill. App. 3d at 103. In *Reid*, the defendant, as a joint renter, retained a tenancy interest in the apartment. Although we note that in both *Moulton* and *Reid*, an existing order of protection barred the entry of the defendants, we believe that this order did not necessarily destroy each defendant's ownership or tenancy interest in the property.

Unlike *Moulton* and *Reid*, in this case, when defendant entered his former marital residence on September 20, 1996, he no longer possessed an ownership interest in the marital residence. Any ownership interest defendant possessed prior to the parties' divorce was extinguished at the time of the entry of the dissolution judgment. The dissolution judgment granted Johnson permanent exclusive possession of and all the equity in the marital residence and gave Johnson responsibility for the debts related to the marital residence. Although defendant's name had not yet been removed from the title and mortgage of the marital residence on the date in question, Johnson testified that she was in the process of doing so. By its very nature, the dissolution judgment established the parties' intent to sever their joint tenancy in the marital residence. See *Estate of Dompke v. Dompke*, 186 Ill. App. 3d 930 (1989) (actual transfer of interest is not required to sever joint tenancy where dissolution decree clearly established intent to sever). Thus, absent an ownership interest, defendant did enter the dwelling place "of another" when he entered Johnson's home on September 20, 1996. Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

INGLIS, J., concurs.

JUSTICE RATHJE, dissenting:

I respectfully dissent. Contrary to the majority's view, *People v. Reid*, 179 Ill. 2d 297 (1997), and *People v. Moulton*, 282 Ill. App. 3d 102 (1996), support defendant's contention that his conviction on home invasion should be reversed for failure to establish one of the offense's elements.

Before this court, the State posits that *Reid* and *Moulton* are different from this case because in those cases the marriages were not dissolved while in this case the marriage had been dissolved. However,

*Moulton* stated that "[t]he marriage between the defendant and the victim *** had been dissolved on March 7, 1995," about four months prior to the purported home invasion in that case. *Moulton*, 282 Ill. App. 3d at 103. Moreover, there is nothing in *Reid* that shows that the defendant and the victim in that case had ever been married.

Admittedly, there is a factual distinction between this case and *Moulton* that is worth noting. In *Moulton*, the divorce decree granted the wife exclusive possession of the marital residence only for a period of about two years, after which the marital residence was to be sold and the proceeds divided evenly between the parties. *Moulton*, 282 Ill. App. 3d at 103. In this case, the divorce decree granted Johnson permanent exclusive possession of and all the equity in the marital residence and gave Johnson responsibility for the debts related to the marital residence.

Despite this distinction, I believe that this court should follow *Reid* and *Moulton*. I am convinced that the courts in *Reid* and *Moulton* correctly determined that the legislature did not intend the home invasion statute to apply to domestic disputes. Even if the parties are divorced and one of the parties has the right to exclusive possession of the property in question, the home invasion statute would not apply as long as there is an indication of joint ownership of the property, such as the name of both parties on the title to the property.

Defendant's claim to ownership of the former marital residence in this case may be seen as diminished in view of the terms of the divorce decree. Nonetheless, it is undisputed that defendant was listed as a joint tenant of the property and his name was still on the mortgage for the property on September 20, 1996.

This court should hold that defendant's conviction of home invasion was improper because, as in *Reid* and *Moulton*, defendant did not enter the dwelling place of another when he entered his former marital residence on September 20, 1996. Defendant's entry into the dwelling place was therefore outside the scope of the home invasion statute.