The **PEOPLE** of the State of Colorado, Complainant,

v.

**Phillip Jeffrey NORTH, Attorney–Respondent.**

**No. 98SA138.**

Supreme Court of Colorado, En Banc.

Aug. 31, 1998.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Jay S. Horowitz, Philip L. Gordon, Krendl Horowitz & Krendl, Denver, for Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline case, Phillip Jeffrey North, answered a question on the application for admission to the Bar of Colorado falsely, and was subsequently admitted to practice law in this state. A hearing panel of the grievance committee approved the findings and recommendation of a hearing board that North be publicly censured. We accept the recommendation.

I

North was admitted to practice law in Colorado on May 4, 1993. He was licensed to practice law in West Virginia in 1978 and in Virginia in 1986. Based on the evidence presented, the hearing board made the following findings by clear and convincing evidence.

On September 18, 1992, North filed an application for admission to the State Bar of Colorado on motion pursuant to C.R.C.P. 201.3(1)(a). The board found that North reviewed the application form in a cursory

manner and paid little attention to the specific questions. In particular, question 35 asked the following:

Regardless of whether the record has been expunged, cancelled or annulled have you ever been investigated, arrested, charged, convicted, imprisoned, placed on probation or parole or forfeited collateral for any offense against the law? (If YES, describe all relevant circumstances including, but not limited to, the date, location, court, facts and disposition, if any, concerning the matter. In answering this question you may omit traffic offenses for which you paid a $50 fine or less.)

Because he did not adequately review this question, North mistakenly believed that it referred only to criminal convictions. He instructed his secretary to check the box marked "No" to question 35. He did not provide any further details in response to the question. The board also found that North signed the application without further review. By signing the application, North swore as follows:

Being first duly sworn upon oath, I depose and state ... that the statements and representations made in the foregoing application are true and correct; ... that it is understood by me that if any statements or representations are false or untrue, that the license may be denied or, if granted, may be revoked....

The application for admission was approved in April 1993, and he was admitted on May 4, 1993.

North's answer to question 35 was false and untrue. On November 10, 1977, when he applied for admission to the bar of West Virginia, he prepared a written response to a character questionnaire which included this question 13:

13. The following is a complete record of all criminal proceedings (including traffic violations other than occasional parking violations) to which I am or have been a party:

North's answer was:

Date: 1/31/71
Court: Charleston Police Court
Nature of Proceedings: Criminal

Plaintiffs: State
Disposition: dropped/expunged

Underneath his handwritten responses, North made the following comment: "[C]harge: possession of marijuana[.] Note: substance *was not* marijuana; charges dropped[.]"

At the hearing, North's recollection of this incident was vague because it happened twenty-eight years ago. According to the hearing board, what North recalls

is that he was sitting in a car parked outside a building while a friend went inside. A police officer approached the car, talked to [North], and then asked [North] to follow him to the police station. [North] drove the car to the police station, where he was asked some questions. At the police station, [North] was informed that police had discovered a substance in the car which they believed was marijuana. [North] was allowed to leave the police station. No further action was taken by the police.

The board found that there was clear and convincing evidence that North was at least investigated for an offense against the law in South Carolina, even if he was not formally charged.

Further, North was investigated for an offense against the law in London, England in 1984, where he attended graduate school. He was detained by the London police and questioned about an allegation that he caused bodily harm to the teen-aged son of a friend. The police asked North to go to the police station to answer questions. North told the police that the teen-ager stole from his residence and when he confronted him about it, the discussion led to pushing and shoving between the two. After questioning, North was summoned to a legal hearing concerning the charge that he caused bodily harm. He hired a lawyer to represent him at the hearing before a tribunal which included a jury or panel as decision-maker. At the conclusion of the hearing, the charges were dropped. He was nevertheless required to report this incident in which he was charged with a criminal offense to the Board of Law Examiners.

The assistant executive director of the Board of Law Examiners testified that had North disclosed these incidents in his application and had given the Board of Law Examiners an opportunity to investigate them, he would probably still have been admitted. Nonetheless, North's false response to question 35 concerning offenses against the law was material to the process of evaluating his application.

While the board found that North's response to question 35 was not intentional, "he completely disregarded his responsibility to review carefully the application and verify that the responses were accurate. This casual attitude toward an application for admission to the bar rises to the level of reckless behavior." We agree. DR 1–101(A) provides, "A lawyer is subject to discipline if he has made a materially false statement in, or he has deliberately failed to disclose a material fact requested in connection with, his application for admission to the Bar."

■ Initially, we find that North's negative response to question 35 constituted "making a materially false statement in ... his application for admission to the Bar," and not merely an omission. In *Brogan v. United States,* ––– U.S. –––, 118 S.Ct. 805, 807–08, 139 L.Ed.2d 830 (1998), the Court held that a federal statute imposing criminal liability for making false statements to federal investigators was violated when the defendant falsely answered "no" to the question whether he had ever received cash or gifts from a certain individual when he was a union officer. "The word 'no' in response to a question assuredly makes a 'statement'...." 118 S.Ct. at 808. The Court therefore rejected the so-called "exculpatory no" exception that some lower courts had grafted onto the criminal statute. *See id.* at 811–12. We find the Court's reasoning persuasive in the present context.

■ Second, while DR 1–101(A) does not on its face impose the requirement that a lawyer have any particular mental state when making the false statement, we believe that a state of mind of at least recklessness must be shown. In *In re Rosen,* 570 A.2d 728, 728 (D.C.Ct.App.1989), the lawyer, a member of the bar of the District of Colum-

bia, had applied for admission in Maryland. When he filed his initial application, he answered that no charges or complaints were pending against him, which was apparently true at that time. *See id.* However, disciplinary complaints were subsequently filed against him. After the complaints were filed, he endorsed a written oath as part of his Maryland application that stated that all of his responses on the initial affidavit and questionnaire were still accurate, which they were not. *See id.*

At an earlier disciplinary proceeding in Maryland, Rosen had testified that in signing the oath he had failed to review the affidavit and questionnaire and did not recall its contents. The D.C. Court of Appeals remanded the case to the disciplinary board for further findings on Rosen's state of mind when he allegedly violated DR 1–101(A). On remand, the board found that Rosen "had acted with reckless disregard as to the truth or falsity of the information he had supplied to Maryland, and further, that if scienter were required to show a violation of DR 1–101(A), such scienter could be inferred from this reckless conduct." *Id.* at 729.

The court noted that "DR 1–101(A) is problematic to the extent it indicates no requisite 'state of mind' to render affirmative misrepresentations sanctionable." *Id.* at 730. As the court found:

There is authority, however, to support the reckless disregard standard articulated by the Maryland court in this case. *See e.g., In re Jordan,* 106 Ill.2d 162, 88 Ill.Dec. 1, 8, 478 N.E.2d 316, 323 (1985) (respondent showed "serious lack of concern for the truth"); *In re Del Rio,* 407 Mich. 336, 353, 285 N.W.2d 277, 284 (1979) (respondent showed "inexcusable laxness in failing to present ... requested documents [although] we are not convinced that respondent willfully [misled] the State Bar").

*Id.* A standard of recklessness for violation of a disciplinary regulation or rule is consistent with our previous cases:

Under certain circumstances, an attorney's conduct can be so careless or reckless that it must be deemed to be knowing and will constitute a violation of a specific disciplin-

ary rule. We believe that the element of scienter is shown with respect to a violation of DR 1–102(A)(4) [now Colo. RPC 8.4(c) ] when it is established that the attorney "deliberately closed his eyes to facts he had a duty to see . . . or recklessly stated as facts things of which he was ignorant."

*People v. Rader*, 822 P.2d 950, 953 (Colo. 1992); *see also People v. Small*, 962 P.2d 258, 259–60 (Colo.1998). We therefore conclude that a false statement must be made at least recklessly to violate DR 1–101(A). The hearing board found that North had this precise state of mind when he answered question 35 falsely. We agree with the hearing board that North thereby violated DR 1–101(A).[1]

## II

■ The hearing panel approved the board's recommendation of a public censure. Neither of the parties has excepted to the recommendation. Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of aggravating or mitigating factors:

Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

ABA *Standards* 6.12. On the other hand, public censure

is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes

injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

*Id.* at 6.13. North's conduct in this case was reckless, not merely negligent, so without any mitigating factors, at least a short period of suspension would be appropriate. *See People v. Small*, 962 P.2d 258, 261 (Colo. 1998) (holding that where lawyer's mental state when he gave false testimony at trial went beyond negligence and was equivalent to knowing for disciplinary purposes, suspension was the presumed sanction); *see also People v. Mattox*, 862 P.2d 276, 277 (Colo. 1993) (imposing suspension for one year in reciprocal discipline proceeding where lawyer failed to disclose on petition for permission to practice in federal district court that she had been previously disciplined in a number of jurisdictions); *People v. Mattox*, 639 P.2d 397, 398–99 (Colo.1982) (failing to disclose misdemeanor conviction in another state when applying for Colorado bar and subsequent disbarment from other state warranted one year suspension from practice of law); *In re Rosen*, 570 A.2d at 730 (suspending lawyer for nine months who recklessly and falsely answered "no" to a question on an application for admission).

There are some mitigating circumstances, however. First, North has practiced in this state for the past five years without any other discipline. *See* ABA *Standards* 9.32(a) (absence of a disciplinary record is a mitigating factor for determining the proper level of discipline). In addition, North has cooperated in these proceedings, *see id.* at 9.32(e); and has presented evidence of his good character and reputation, *see id.* at 9.32(g). The only aggravating factor is North's substantial

---

1. North filed his application for admission in 1992 when the Code of Professional Responsibility governed. We promulgated the Rules of Professional Conduct effective January 1, 1993. Colo. RPC 8.1 provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary or reinstatement matter, shall not:

(a) *knowingly* make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension *known* by the person to have arisen in the matter, or *knowingly* fail to respond reasonably to a lawful demand for information from an admission or disciplinary authority. . . .

As we pointed out in *Small*, 962 P.2d at 260, "With one exception, we have considered a reckless state of mind, constituting scienter, as equivalent to 'knowing' for disciplinary purposes."

experience in the practice of law. *See id.* at 9.22(i). We do not consider the fact that there was evidence that North would nevertheless have been admitted to practice if he had revealed his criminal history to be a factor in mitigation. If there was any substantial doubt on this point, North's license would be revoked. Although the question is close, we have decided to accept the hearing panel's recommendation and publicly censure North.

### III

Phillip Jeffrey North is hereby publicly censured. It is ordered that North pay the costs of this proceeding in the amount of $790.61 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.