(No. 89649

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. HARRY W. ELLIS, Appellee.

*Opinion filed February 22, 2002.*

James E. Ryan, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Joel D. Bertocchi, Solicitor General, William L. Browers and Jay Paul Hoffmann, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Martin P. Moltz and Marshall M. Stevens, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Barbara R. Paschen, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE KILBRIDE delivered the opinion of the court:

In this case we are asked to decide whether Illinois will recognize the "exculpatory no" doctrine as an exception to criminal liability for obstruction of justice pursuant to section 31—4(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/31—4 (West 1996)). We answer that question in the negative.

On October 25, 1996, the Lake County State's Attorney filed an information against defendant, Harry W. Ellis, alleging attempted obstruction of justice pursuant to section 31—4(a) of the Code and unlawful display of vehicular registration pursuant to section 4—104(a) of the Illinois Vehicle Code (625 ILCS 5/4—104(a) (West 1996)). Specifically, the State alleged that defendant was operating a motor vehicle without proper registration and, when detained by a police officer, provided false information regarding his identity. The State also charged defendant with driving on a revoked license.

A jury convicted defendant of one count of attempted

obstruction of justice but acquitted him of unlawful display of registration. Defendant was also convicted of driving on a revoked license. Defendant appealed, arguing that he was denied effective assistance of counsel and that the State improperly bolstered the credibility of police witnesses at trial. The appellate court did not reach the issues defendant raised and instead ruled *sua sponte* that defendant's conviction must be overturned under the "exculpatory no doctrine." No. 2—98—0832 (unpublished order under Supreme Court Rule 23).

We allowed the State's petition for leave to appeal. 166 Ill. 2d R. 315(a). We reverse and remand.

## I. BACKGROUND

Officer Tony Moran testified that he worked as a police officer in Grayslake. He testified that, on October 4, 1996, he was on patrol and noticed a car being driven with no rear registration sticker. Moran stopped the car and asked the driver for identification and proof of insurance. According to Moran, the driver claimed that he did not have his license with him, that his name was Gary Harris, and that his date of birth was September 14, 1954.

Moran returned to his car and ran a computerized background check. The background check revealed that Illinois databases contained no record of a licensed driver with that name and date of birth. When Moran returned and confronted the driver with this information, the driver suggested that Moran try checking Colorado. Similarly, a background check revealed that Colorado databases contained no record of a licensed driver with that name and date of birth. Moran again confronted the driver. The driver maintained that his name was Gary Harris, but that his date of birth was October 14, 1954. Moran still found no information in either Illinois or Colorado databases. Moran wrote on his notepad the name Gary Harris and both dates of birth that the driver had

given him. Moran showed the notepad to the driver and was told that it was correct. Moran "knew [the driver] was lying *** or obstructing a peace officer" and placed him under arrest.

Moran subsequently searched the car's glove compartment and found a driver's abstract containing the name Harry Ellis, born October 14, 1956. The abstract contained a physical description that matched that of the driver. Another background check revealed that the Illinois Secretary of State had revoked Harry Ellis' driver's license. Under Moran's questioning, the driver admitted that his name was Harry Ellis and that his date of birth was October 14, 1956.

The State also called Officer Randolph Heglund, who had arrived on the scene as backup during the second background check. His testimony corroborated Moran's.

Defendant testified on his own behalf. Defendant testified that he was stopped by Moran while driving a car belonging to a gentleman named Gary Beckman. He claimed that, when Moran asked his name, he replied "Harry Ellis." Defendant also testified to a continuing error on his Illinois driver's license abstract, misstating his birth date as October 4, 1956. He added that he never had an opportunity to explain this problem to Moran.

The defense also presented the testimony of Ricardo Javier and Lucy Ora. Javier and Ora were passengers in the car at the time of the stop. They both testified that defendant gave his correct name and date of birth to Moran.

Defendant was convicted of driving on a revoked license and attempted obstruction of justice but acquitted of unlawful display of registration. The trial court sentenced defendant to a six-month jail term. The court stayed defendant's sentence pending the successful completion of a one-year term of probation.

Defendant appealed, arguing that he was denied ef-

fective assistance of counsel and that the State improperly bolstered the credibility of police witnesses at trial. The appellate court did not reach these issues and instead ruled *sua sponte* that defendant's conviction must be overturned under the "exculpatory no doctrine." The appellate court found that defendant should not have been prosecuted for attempted obstruction of justice when he was the target of an officer's investigation and a truthful revelation of his name would have been tantamount to an admission of driving with a revoked license. 625 ILCS 5/6—303 (West 1996). The appellate court reasoned that, despite the absence of briefing or argument on the issue, justice required application of the doctrine to avoid a grave error of law.

We granted the State's petition for leave to appeal. 177 Ill. 2d R. 315.

## II. ANALYSIS

The issue of whether a defendant can rely upon the exculpatory no doctrine to escape criminal liability pursuant to section 31—4(a) of the Code is a question of law and therefore our review is *de novo. Department of Public Aid ex rel. Davis v. Brewer*, 183 Ill. 2d 540, 554 (1998).

Section 31—4(a) states in pertinent part as follows:

> "A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:
>
> (a) *** furnishes false information." 720 ILCS 5/31—4 (West 1996).

The exculpatory no doctrine originated in the federal courts as an exception to section 1001 of title 18 United States Code (18 U.S.C. § 1001 (1994)). This federal statute is similar to our obstructing justice statute in that it forbids utterance of a false or misleading statement. The federal doctrine essentially states that a simple denial of guilt does not fall within the scope of section 1001. The doctrine is rooted in the legislative history of section

34

1001 and the additional theory that exception is necessary under the fifth amendment because a truthful answer would have incriminated the declarant. T. Thomas, Annotation, 102 A.L.R. Fed. 742 (1991).

Most federal courts of appeals have held that the exception applies only to mere denials of criminal activity and not to affirmative misrepresentations. *United States v. Chevoor*, 526 F.2d 178 (1st Cir. 1975); *United States v. Adler*, 380 F.2d 917 (2d Cir. 1967); *United States v. Beer*, 518 F.2d 168 (5th Cir. 1975); *United States v. Isaacs*, 493 F.2d 1124 (7th Cir. 1974); *United States v. Moore*, 638 F.2d 1171 (9th Cir. 1980); *United States v. Tabor*, 788 F.2d 714 (11th Cir. 1986). See also *United States v. North*, 708 F. Supp. 364 (D.D.C. 1988).

The United States Supreme Court, however, in *Brogan v. United States*, 522 U.S. 398, 139 L. Ed. 2d 830, 118 S. Ct. 805 (1998), rejected the doctrine's application to section 1001. Section 1001 is similar to our obstructing justice statute and provides in pertinent part as follows:

> "(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
>
>> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>>
>> (2) *makes any materially false, fictitious, or fraudulent statement or representation*; or
>>
>> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title or imprisoned not more than 5 years, or both." (Emphasis added.) 18 U.S.C. § 1001 (Supp. 1996).

The Court found that recognition of *any* type of exception for a false statement, *including* a simple denial of wrongdoing, constituted a "limitation that the text [of section 1001] would not bear." *Brogan*, 522 U.S. at 403,

139 L. Ed. 2d at 837, 118 S. Ct. at 809. The Court held that section 1001, by its terms, covers " 'any' " false statement " 'of whatever kind,' " including the use of the word "no" in response to a question. *Brogan*, 522 U.S. at 400, 139 L. Ed. 2d at 835, 118 S. Ct. at 808, quoting *United States v. Gonzales*, 520 U.S. 1, 5, 137 L. Ed. 2d 132, 138, 117 S. Ct. 1032, 1035 (1997).

The exculpatory no doctrine also has historical roots in Illinois law. Illinois courts first applied the doctrine to section 31—4(a) in *People v. Brooks*, 51 Ill. App. 3d 800, 805 (1977). In *Brooks*, defendants were arrested following a shooting at a service station. After receiving *Miranda* warnings and signing waivers, defendants denied they were at the station on the date of the occurrence or that they knew about a gun or a shooting. Defendants were convicted of obstructing justice and other charges.

The appellate court reversed the obstruction convictions, finding in part that defendants' answers formed the basis for their convictions. *Brooks*, 51 Ill. App. 3d at 803. The court concluded that, while section 31—4(a) contained no express exemption for exculpatory denials of one's own guilt, the legislature did not intend to include such statements within the obstructing justice statute.

The *Brooks* court indicated that its holding was limited to a narrow factual scenario, noting specifically that defendants' false statements exculpating their involvement in wrongdoing had been made after they had been charged and that they were clearly the targets of an investigation. *Brooks*, 51 Ill. App. 3d at 805. The court further implied that it may have reached an opposite conclusion under different circumstances. The court noted that defendants' statements may have come within the ambit of the obstructing justice statute had they gone "beyond the limits of his own involvement in the crime charged *** and therefore beyond his own

denial of wrongdoing. Beyond those limits[,] a defendant *** has no privilege to intentionally mislead the police or to withhold information as to the crimes of others which are not inextricably connected with the charge against him." *Brooks*, 51 Ill. App. 3d at 805.

Thus, from its earliest introduction to Illinois law in *Brooks*, the exculpatory no doctrine in this state has applied in situations where (1) an obstructing justice defendant provided false answers after being charged with a crime; (2) defendant was the target of an investigation; (3) defendant's false answers were intended to conceal his or her own wrongdoing; and (4) defendant's statement did not go beyond a mere denial of wrongdoing. See *Brooks*, 51 Ill. App. 3d at 805.

Our appellate court has reexamined the exculpatory no doctrine in other cases and has generally adhered to these four requirements. For example, in *People v. Toolen*, 116 Ill. App. 3d 632 (1983), the court elaborated on the distinction between a mere denial of wrongdoing and an affirmatively false statement. Toolen was charged with obstructing justice after he made false statements to investigators and testified falsely at a grand jury proceeding. On review, the appellate court rejected defendant's reliance on the result reached in *Brooks*, deeming that case distinguishable. Unlike Brooks, Toolen's actions went beyond mere exculpatory denials of guilt and instead amounted affirmatively to false and misleading statements. *Toolen*, 116 Ill. App. 3d at 650-51. Thus, Toolen's statements were more akin to the "different circumstances" that the *Brooks* court contemplated (*Brooks*, 51 Ill. App. 3d at 805) and therefore the "exculpatory no" doctrine did not apply. See *Toolen*, 116 Ill. App. 3d at 650-51. The court elaborated and accepted the State's argument that "the suspect of a criminal investigation has two permissible options: to remain silent or to deny involvement in any crimes. If [a suspect goes] beyond

that[ ] and *** makes affirmatively false and misleading statements, [the suspect] has come within the ambit of the obstructing justice statute." *Toolen*, 116 Ill. App. 3d at 650. Toolen's affirmative lies went beyond the two options.

In *People v. Jackiewicz*, 163 Ill. App. 3d 1062 (1987), Jackiewicz was charged with obstructing justice after he provided false answers to investigators regarding an incident that involved his brother. The appellate court distinguished *Brooks* and rejected defendant's reliance on the exculpatory no doctrine because Jackiewicz was not charged with a crime when he uttered the false statements. *Jackiewicz*, 163 Ill. App. 3d at 1065. Additionally, while the court did not specifically address these points, we note that the discussion in *Jackiewicz* clearly indicates that defendant's false statements were made in an attempt to conceal someone else's wrongdoing and that they went beyond a mere denial of guilt.

In *People v. Remias*, 169 Ill. App. 3d 309 (1988), Remias was charged with obstructing justice after offering false names to a police officer. The appellate court rejected defendant's reliance on the exculpatory no doctrine, finding it inapplicable under the circumstances. The court found in part that, unlike the defendants in *Brooks*, Remias had not been charged with a crime when he uttered the false statements. *Remias*, 169 Ill. App. 3d at 311. The court further distinguished *Brooks* by noting that the defendants in that case were being questioned about their involvement in an established offense and not merely being asked for identifying information. The court rejected Remias' contention that he would have effectively confessed his guilt by offering his correct name. *Remias*, 169 Ill. App. 3d at 311.

The sole Illinois case contradicting these principles is *People v. Alvarado*, 301 Ill. App. 3d 1017 (1998). There, Alvarado was charged with obstructing justice after he

provided a false birth date to a police officer. The appellate court found that defendant's statement did not go "beyond the limits of his own direct involvement" in wrongdoing and therefore the exculpatory no doctrine applied. *Alvarado*, 301 Ill. App. 3d at 1024-25. This conclusion is, however, contrary to the previously discussed decisions of Illinois and federal courts considering the difference between a mere exculpatory denial of wrongdoing and an affirmative lie. *E.g.*, *Toolen*, 116 Ill. App. 3d at 650-51 (distinguishing between a mere denial of wrongdoing and an affirmative misrepresentation); *Remias*, 169 Ill. App. 3d at 311 (finding that defendant's act of providing false name to a police officer went beyond a mere denial of wrongdoing). See also *Chevoor*, 526 F.2d at 183-84 (noting that defendant "did not even go so far as to fabricate a misleading story in response to the inquiries. He merely gave negative, oral responses to the questioning"). Additionally, it appears that the *Alvarado* court did not consider the fact that defendant had not been charged with a crime when he misrepresented his birth date.

This court has never considered whether the exculpatory no doctrine can be used to shield a defendant from criminal liability under section 31—4(a). We have also never commented on the doctrine's breadth or elements. We need not address the latter question because, for the reasons that follow, we answer the former in the negative.

In support of their respective positions favoring or opposing adoption of the exculpatory no doctrine, the parties collectively raise several arguments. Primarily, those arguments relate to the following: (A) the plain language of section 31—4(a); (B) cases from other jurisdictions considering the viability of the exculpatory no doctrine; (C) constitutional concerns favoring recognition of the exculpatory no doctrine; and (D) public policy considerations. We address these issues in turn.

A. Plain Language of Section 31—4(a)

The State first contends that the plain language of section 31—4(a) contradicts defendant's assertion of the exculpatory no doctrine. Defendant counters that we should construe section 31—4(a) narrowly to preserve application of the exculpatory doctrine, as the appellate court did in *Brooks*. We agree with the State.

The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994). To determine the legislature's intent, a court first looks to the statute's language, according that language its plain and commonly understood meaning. If possible, the court must give effect to every word, clause, and sentence; it must not read a statute so as to render any part inoperative, superfluous, or insignificant; and it must not depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990).

As noted previously, a person obstructs justice pursuant to section 31—4(a) of the Code when he or she knowingly furnishes false information with intent to prevent the apprehension or obstruct the prosecution of *any person*. 720 ILCS 5/31—4 (West 1996). In this case, the State alleged that defendant violated section 31—4(a) when he furnished false information in an effort to obstruct his own apprehension or prosecution. Before this court, the State essentially argues that the phrase "any person" is expansive and literally means any person, including situations where the target of the apprehension or prosecution is also the declarant of the false statement. Defendant counters that the legislature could not have intended that the phrase "any person" include the declarant of the false statement.

We find that the phrase "any person" has a commonly understood and ordinary meaning. It is broad and

expansive and therefore must include a person that makes false statements to obstruct his or her own apprehension or prosecution. Any other conclusion would depart from the well-settled rule that courts must not depart from a statute's plain language by reading into it exceptions that the legislature did not express. See *Kraft*, 138 Ill. 2d at 189. If the legislature intended to exclude a declarant-suspect from liability for false denials of information regarding his or her true identity, it could have easily used alternate terms such as "another person" or "of another" or "separate person." The legislature did not use such language, and we are not in a position to assume that the statute means something other than what it says. We therefore reject defendant's argument on this point.

## B. Other Jurisdictions Adopting the Exculpatory No Doctrine

Defendant argues that we should follow the example set by other jurisdictions that have adopted the exculpatory no doctrine in analogous contexts, primarily *State v. Pandozzi*, 136 N.J. Super. 484, 347 A.2d 1 (1975), and its progeny. Initially, we note that defendant's argument is less than compelling because other jurisdictions have specifically rejected the exculpatory no doctrine. *E.g.*, *People v. North*, 964 P.2d 510, 512 (Colo. 1998). In any event, for the reasons that follow, we necessarily reject defendant's reliance on these cases.

In *Pandozzi*, state investigators possessed substantial evidence supporting a charge when they casually approached the suspect at his business and asked him if he had received bribes. He denied it and was subsequently charged with violating the "false information" statute. N.J. Stat. Ann. § 2A:148—2.21 (West 1969).

The New Jersey Appellate Division traced the development of the federal "exculpatory no" exception to liability under section 1001. Noting the parallel between

the New Jersey "false information" statute and section 1001, the *Pandozzi* court adopted the exculpatory no doctrine and held that the New Jersey statute excluded self-exculpating suspects from the phrase "any person." *Pandozzi*, 136 N.J. Super. at 489, 347 A.2d at 4-5. The court reasoned that the prosecution is required to make its case without relying on the accused to provide self-incriminating evidence. *Pandozzi*, 136 N.J. Super. at 489, 347 A.2d at 4, citing *United States v. Davey*, 155 F. Supp. 175 (S.D.N.Y. 1957). The *Pandozzi* court further reasoned that a literal reading of "any person" is absurd where the unsworn statements were made without procedural safeguards and in informal circumstances not likely to provide the suspect actual notice of the danger that a false utterance will result in its own criminal charge. *Pandozzi*, 136 N.J. Super. at 489, 347 A.2d at 3, citing *United States v. Ehrlichmann*, 379 F. Supp. 291 (D.D.C. 1974). Accord *Friedman v. United States*, 374 F.2d 363, 367 (8th Cir. 1967). Finally, the court found that a literal construction of the statute would have been extremely unreasonable because it would render the concept of perjury superfluous. *Pandozzi*, 136 N.J. Super. at 489, 347 A.2d at 3. The court did note, however, that when a defendant makes a false statement that goes beyond a simple denial of wrongdoing, he would run afoul of the false statements statute. *Pandozzi*, 136 N.J. Super. at 491, 347 A.2d at 5.

Initially, we note that the facts of this case are distinguishable from those of *Pandozzi*. Defendant here did not simply deny breaking the law. Instead, he provided affirmatively false and misleading answers to a police officer conducting an investigation. *Pandozzi* specifically states that such conduct would not fall within the ambit of the exculpatory no doctrine. *Pandozzi*, 136 N.J. Super. at 491, 347 A.2d at 5.

Further, we are unpersuaded by *Pandozzi*, its prog-

eny, and its predecessors. The exculpatory no doctrine's roots, as they existed in these cases, were eviscerated by the United States Supreme Court in *Brogan*. Given that the Supreme Court essentially eliminated the exculpatory no doctrine from federal jurisprudence in *Brogan*, we are necessarily inclined to find that cases preceding *Brogan*, such as *Pandozzi*, are no longer persuasive precedent.

## C. Constitutional Considerations

Despite our finding that section 31—4(a)'s plain language precludes reliance on the exculpatory no doctrine, defendant nevertheless maintains that constitutional considerations require its application. Specifically, defendant argues that the exculpatory no doctrine is necessary to preserve his right to avoid self-incrimination. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. We disagree.

The Supreme Court rejected the same argument in *Brogan*. Defendant in that case argued that "a literal reading of § 1001 violate[d] the 'spirit' of the Fifth Amendment because it place[d] a 'cornered suspect' in the 'cruel trilemma' of admitting guilt, remaining silent, or falsely denying guilt." *Brogan*, 522 U.S. at 404, 139 L. Ed. 2d at 837, 118 S. Ct. at 809-10. The Court found that:

> "This 'trilemma' is wholly of the guilty suspect's own making, of course. An innocent person will not find himself in a similar quandary (as one commentator has put it, the innocent person lacks even a 'lemma,' Allen, The Simpson Affair, Reform of the Criminal Justice Process, and Magic Bullets, 67 U. Colo. L. Rev. 989, 1016 (1996)). And even the honest and contrite guilty person will not regard the third prong of the 'trilemma' (the blatant lie) as an available option. The *bon mot* 'cruel trilemma' first appeared in Justice Goldberg's opinion for the Court in *Murphy v. Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52 (1964), where it was used to explain the importance of a suspect's Fifth Amend-

ment right to remain silent when subpoenaed to testify in an official inquiry. Without that right, the opinion said, he would be exposed 'to the cruel trilemma of self-accusation, perjury or contempt.' [378 U.S.] at 55. In order to validate the 'exculpatory no,' the elements of this 'cruel trilemma' have now been altered—ratcheted up, as it were, so that the right to remain silent, which was the liberation from the original trilemma, is now itself a cruelty. We are not disposed to write into our law this species of compassion inflation.

Whether or not the predicament of the wrongdoer run to ground tugs at the heartstrings, neither the text nor the spirit of the Fifth Amendment confers a privilege to lie. '[P]roper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely.' *United States v. Apfelbaum*, 445 U.S. 115, 117 (1980). See also *United States v. Wong*, 431 U.S. 174, 180 (1977); *Bryson v. United States*, 396 U.S. 64, 72 (1969)." (Emphasis omitted.) *Brogan*, 522 U.S. at 404-05, 139 L. Ed. 2d at 837-38, 118 S. Ct. at 810. We agree with the Supreme Court's finding that there is a substantive difference between remaining silent and actively lying. Neither the United States Constitution nor the Illinois Constitution conveys a right to lie.

We note that the absence of a right to lie did not leave defendant without options. A suspect's entire right to remain silent attaches regardless of whether the suspect is in custody or is the focus of a criminal investigation and can be invoked before custody. *People v. Spivey*, 209 Ill. App. 3d 584 (1991); *People v. Young*, 201 Ill. App. 3d 521 (1990); *People v. Christomos*, 172 Ill. App. 3d 585 (1988). A suspect may be silent without arrest or other repercussion from the investigating officers or agencies. *Brown v. Texas*, 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979) (stating that a person cannot be stopped and required to identify himself or herself absent reasonable suspicion of a crime); *Florida v. Bostick*, 501 U.S. 429, 431-38, 115 L. Ed. 2d 389, 397-401, 111 S. Ct. 2382, 2384-88 (1991) (an individual can refuse to cooperate

with random investigatory approaches of officers). Thus, defendant could have legally avoided prosecution for attempted obstruction of justice by simply refusing to give his name and date of birth. We therefore reject defendant's contention on this point.

### D. Public Policy Considerations

Notwithstanding our finding that section 31—4(a)'s plain language negates insulation of criminal liability under the exculpatory no doctrine, defendant argues that the exculpatory no doctrine is necessary to protect citizens from police and prosecutorial overzealousness. Again, we disagree.

The defendant in *Brogan* made an argument similar to defendant's argument here. The Supreme Court was unpersuaded, stating that:

> "The supposed danger is that overzealous prosecutors will use this provision as a means of 'piling on' offenses—sometimes punishing the denial of wrongdoing more severely than the wrongdoing itself. The objectors' principal grievance on this score, however, lies not with the hypothetical prosecutors but with Congress itself, which has decreed the obstruction of a legitimate investigation to be a separate offense, and a serious one. It is not for us to revise that judgment. Petitioner has been unable to demonstrate, moreover, any history of prosecutorial excess, either before or after widespread judicial acceptance of the 'exculpatory no.' And finally, if there is a problem of supposed 'overreaching' it is hard to see how the doctrine of the 'exculpatory no' could solve it. It is easy enough for an interrogator to press the liar from the initial simple denial to a more detailed fabrication that would not qualify for the exemption." *Brogan*, 522 U.S. at 405-06, 139 L. Ed. 2d at 838-39, 118 S. Ct. at 810.

The Court did not, however, announce its rejection of an "exculpatory no" exception in *Brogan* without lengthy discussion of serious concerns arising from the misuse of "false statement" statutes. See *Brogan*, 522 U.S. at 408, 139 L. Ed. 2d at 840, 118 S. Ct. at 812 (Souter, J., concur-

ring); 522 U.S. at 408-18, 139 L. Ed. 2d at 840-46, 118 S. Ct. at 812-17 (Ginsburg, J., concurring, joined by Souter, J.); 522 U.S. at 418-21, 139 L. Ed. 2d at 846-48, 118 S. Ct. at 817-18 (Stevens, J., dissenting, joined by Breyer, J.). We share many of those concerns. For example, Justice Ginsburg noted the Solicitor General's concession that, without the exculpatory no doctrine, prosecutors or police officers could " 'escalate completely innocent conduct into a felony.' " *Brogan*, 522 U.S. at 411, 139 L. Ed. 2d at 843, 118 S. Ct. at 813 (Ginsburg, J., concurring, joined by Souter, J.). She cited several cases where government officials essentially visited suspects with the express purpose of obtaining incriminating statements rather than obtaining information. *E.g.*, *United States v. Dempsey*, 740 F. Supp. 1299, 1306 (N.D. Ill. 1990); *United States v. Tabor*, 788 F.2d 714 (11th Cir. 1986); *United States v. Goldfine*, 538 F.2d 815, 820 (9th Cir. 1976); *United States v. Stoffey*, 279 F.2d 924, 927 (7th Cir. 1960). Additionally, because investigators often expect a suspect to provide false answers, false statement statutes could become a powerful tool to trap a potential defendant. Agents need only informally approach the suspect and elicit a false response and they are assured of a conviction with a harsh penalty even if they are unable to prove the underlying substantive crime. *Brogan*, 522 U.S. at 409 n.1, 139 L. Ed. 2d at 841 n.1, 118 S. Ct. at 812 n.1 (Ginsburg, J., concurring, joined by Souter, J.), citing Note, *Fairness in Criminal Investigations Under the Federal False Statement Statute*, 77 Colum. L. Rev. 316, 325-26 (1977). Justice Ginsburg also cited another commentator's observation that, if an investigator finds it difficult to prove some elements of a crime, he or she can ask questions about other known and provable elements. If the suspect answers falsely, the investigator can then use the crime he or she has prompted as leverage or can seek prosecution for the lie as a substitute for

the crime he or she cannot prove. *Brogan*, 522 U.S. at 411, 139 L. Ed. 2d at 842, 118 S. Ct. at 813 (Ginsburg, J., concurring, joined by Souter, J.), citing Comment, *False Statements to Federal Agents: Induced Lies and the Exculpatory No*, 57 U. Chi. L. Rev. 1273, 1278 (1990). While these concerns are legitimate, we are not faced with a situation where an officer had notice that defendant's license was revoked. We are also not faced with a situation where the officer could not charge defendant with something but for the false statement. We also note that defendant clearly knew that he was driving illegally and that, if caught, he would be subject to severe penalties.

Additionally, as the *Brogan* majority noted, adoption of the exculpatory no doctrine may not necessarily protect against overreaching by police and prosecutors. The answer to this problem lies primarily with the legislature. Our General Assembly has the authority to amend section 31—4(a) in such a way that it cannot be misused. We also acknowledge the existence of several devices that can help prevent police and prosecutor overzealousness, including rules of professional responsibility for attorneys and existing judicial doctrines like the exclusionary rule. Most importantly, a suspect can simply exercise his or her right to remain silent. In sum, we simply cannot overlook section 31—4(a)'s clear language and adopt the exculpatory no doctrine merely because its absence could expose liars to excessive criminal sanctions. We find that public policy considerations, while legitimate, do no necessitate adoption of the exculpatory no doctrine in this context.

### III. CONCLUSION

We find that the plain language of section 31—4(a) of the Code negates defendant's argument that the exculpatory no doctrine insulates him from criminal liability. Section 31—4(a) clearly makes it a crime to impede the

apprehension or prosecution of "any person" by making false statements. Section 31—4(a) contains no express exception for situations where the declarant of the false statement is also the target of the intended apprehension or prosecution. We are not inclined to infer such an exception in this case.

We further find that cases from other jurisdictions adopting the exculpatory no doctrine are undercut by the United States Supreme Court's findings in *Brogan*. We also find that constitutional considerations do not necessitate our adoption of the exculpatory no doctrine in this context. Finally, we are unpersuaded by defendant's argument that public policy considerations require application of the exculpatory no doctrine under these facts.

Since the appellate court's entire rationale rested upon its application of the exculpatory no doctrine in overturning defendant's conviction for obstruction of justice, its judgment is hereby reversed. We remand to the appellate court for consideration of those issues that were properly raised and argued by the parties.

*Reversed and remanded*
*with directions.*