# Illinois Official Reports

## Appellate Court

---

### *People v. Walker*, 2018 IL App (4th) 170877

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DONALD P. WALKER, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-17-0877 |
| Filed | September 13, 2018 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 17-TR-14593; the Hon. William A. Yoder, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Erin Wilson Laegeler, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>James E. Chadd, Jacqueline L. Bullard, and James Henry Waller, of State Appellate Defender's Office, of Springfield, for appellee. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion.<br>Justices Knecht and DeArmond concurred in the judgment and opinion. |

**OPINION**

¶ 1    On July 20, 2017, defendant, Donald P. Walker, was stopped for an improper left turn and received a ticket for driving while his license was revoked (625 ILCS 5/6-303 (West 2016)). On October 4, 2017, defendant filed a motion to suppress evidence from the stop, asserting the police officer who stopped him lacked reasonable, articulable suspicion defendant had violated the law. As a result, defendant argued the evidence obtained by the State as a result of the stop was obtained in violation of defendant's right to be free of unreasonable searches and seizures. After an October 31, 2017, hearing, the circuit court granted defendant's motion to suppress. The State filed a certificate of impairment and this appeal. On appeal, the State argues the circuit court erred by granting defendant's motion to suppress because Officer Manuel Hernandez did have the requisite reasonable suspicion to stop defendant for committing a traffic violation. The State also argues, assuming we find the stop was improper, application of the exclusionary rule is inappropriate under the circumstances here. We affirm.

¶ 2                            I. BACKGROUND

¶ 3    The parties are in agreement with regard to the facts in this case. At around 12:30 a.m. on July 20, 2017, defendant drove his car out of a gas station by making a right turn onto Hershey Road in Bloomington, Illinois. Defendant then proceeded north on Hershey Road, eventually moving into the left turn lane as he approached the intersection of Hershey Road and Empire Street. The traffic light was red, and defendant stopped at the intersection. When the light turned green, defendant made a left turn onto Empire Street, exiting the intersection into the farthest available westbound lane, which was the northernmost lane. After making his left turn, defendant was proceeding in a westerly direction on Empire Street, which had two lanes for westbound traffic. Immediately after defendant exited the intersection, Officer Hernandez stopped defendant for making an improper left turn because defendant did not exit the intersection into the nearest westbound lane of traffic on Empire Street.

¶ 4    After defendant testified as to what occurred, the State moved for a directed verdict. Pursuant to section 11-801 of the Illinois Vehicle Code (625 ILCS 5/11-801 (West 2016)), the State argued defendant was required to turn into the nearest westbound lane. Because defendant did not do so, the traffic stop was valid. The circuit court denied the State's motion for a directed verdict.

¶ 5    Officer Hernandez testified he was traveling behind defendant on Hershey Road. Like defendant, the officer moved into the left-hand turn lane to turn west on Empire Street. Another vehicle was between Officer Hernandez and defendant. When the traffic light turned green, defendant made a left turn into the farthest westbound lane. The officer testified he pulled defendant over for making an improper left turn. On cross-examination, defense counsel and the police officer had the following exchange:

   "[DEFENSE COUNSEL]: Officer, when you pulled Mr. Walker over, it was for a wide turn; is that correct?

   [OFFICER HERNANDEZ]: Yes, sir.

   [DEFENSE COUNSEL]: Your understanding of that statute, what is the appropriate way to make a left turn?

[OFFICER HERNANDEZ]: When there's two lanes, it's to stay in the closest lane in case—like in that intersection, going south on Hershey, you have a turning lane to go east, another one to go directly south, and I believe a third lane that gives you an option to go directly south, and make a turn to go west on Empire.

[DEFENSE COUNSEL]: Now, turning into the nearest lane on a left turn, is that required by the law or is it simply best practice?

[OFFICER HERNANDEZ]: That's what I've read. That's how I interpret it, yes."

The State presented no other evidence.

¶ 6 The State made the following argument to the court:

"The State would reiterate our argument in that the key to this section is that the last line says that whenever practicable, the left turn shall be made in the portion of the intersection to the left of the center of the intersection thereby making it safe for other vehicles to enter the intersection if needed as proper for them. For example, if there was an oncoming car that needed to turn right, they would be able to do so according to that same section in number one. If the vehicle was not required to be in the left-hand lane, that would cause a potentially dangerous situation. In this situation, the law just says that a left turn need to go left at the intersection whenever practicable. There has been no evidence presented or anything that, that shows that this—that there was any circumstances that made that ability to turn into the left most lane not available to the Defendant. He had that opportunity. And then because he had that opportunity, he had that requirement in that the left turn shall be made in that portion of the intersection. For those reasons, we're asking that the motion to suppress be denied."

Defense counsel responded no one testified defendant was to the right of the center of the intersection. Further, the officer did not testify defendant placed anyone in danger or violated the Vehicle Code in any other manner. According to defense counsel, the police officer made the stop based on a misunderstanding of section 11-801 of the Vehicle Code (625 ILCS 5/11-801 (West 2016)).

¶ 7 The trial court noted the facts were not in dispute and the question before it was an issue of law. According to the court, the plain language of section 801(a)(2) allowed defendant to exit the intersection into either of the westbound lanes of traffic. With regard to the last line of subsection (a)(2), which was the focus of the State's argument, the court noted:

"So, if you look at the language in the statute, the intersection is where the two different streets actually converge and make contact with one another. So it[']s between the four corners of the intersection. I, I agree with Mr. McIntyre's analysis of that section of the statute; that it means when you're turning left and there's oncoming traffic turning left, you're to turn before you get to the center of that intersection so that you don't run into each other as you're making your left-hand turn. In other words, northbound traffic on Hershey would turn to the south and west of a vehicle that was southbound on Hershey turning east. So, I, I think it's clear from this statute and the plain meaning of this statute is a defendant could turn into either of the westbound lanes of Empire. And I'm going to grant the motion to suppress because that was the only reason that the officer stopped him."

As a result, the court granted defendant's motion to suppress.

¶ 8 On November 29, 2017, the State filed a timely notice of appeal from the circuit court's grant of defendant's suppression motion and a certificate of impairment. Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017).

¶ 9                                                      II. ANALYSIS

¶ 10 On appeal, the State challenges the circuit court's ruling granting defendant's motion to suppress, arguing the traffic stop was legal because Officer Hernandez had reasonable, articulable suspicion defendant violated the law. According to the State, section 11-801(a)(2) unambiguously required defendant to enter the leftmost lane legally available when he executed the left turn in this case. In the alternative, the State argues section 11-801(a)(2) is ambiguous and Officer Hernandez conducted a lawful traffic stop. Finally, the State contends the circuit court erred in excluding evidence recovered after the stop regardless of the legality of the stop itself.

¶ 11 In reviewing a circuit court's ruling on a motion to suppress evidence, this court applies a two-part standard of review. *People v. Timmsen*, 2016 IL 118181, ¶ 11, 50 N.E.3d 1092. First, we uphold the circuit court's factual findings unless they are against the manifest weight of the evidence. *Timmsen*, 2016 IL 118181, ¶ 11. In this case, the parties are in agreement as to the facts. Second, this court reviews *de novo* the circuit court's ultimate legal conclusion regarding whether suppression is warranted. *Timmsen*, 2016 IL 118181, ¶ 11.

¶ 12 Both the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) protect individuals against unreasonable searches and seizures. *Timmsen*, 2016 IL 118181, ¶ 9. "The touchstone of the fourth amendment is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' " *Timmsen*, 2016 IL 118181, ¶ 9 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). Illinois courts construe the search-and-seizure provision of the Illinois Constitution in the same manner as the fourth amendment. See *People v. Fitzpatrick*, 2013 IL 113449, ¶ 24, 986 N.E.2d 1163 (noting it would construe article I, section 6, of the Illinois Constitution of 1970 in the same manner as the fourth amendment).

¶ 13 A police officer's acts of "stopping a vehicle and detaining its occupants constitute a 'seizure' within the meaning of the fourth amendment." *Timmsen*, 2016 IL 118181, ¶ 9. Such seizures, commonly referred to as vehicle stops, are analyzed under the principles set forth in *Terry*, 392 U.S. 1. *Timmsen*, 2016 IL 118181, ¶ 9. "Pursuant to *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime." *Timmsen*, 2016 IL 118181, ¶ 9. "The officer must have a 'reasonable, articulable suspicion' that criminal activity is afoot." *Timmsen*, 2016 IL 118181, ¶ 9 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). While "reasonable, articulable suspicion" constitutes a less demanding standard than probable cause, the police "officer's suspicion must amount to more than an 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity." *Timmsen*, 2016 IL 118181, ¶ 9 (quoting *Terry*, 392 U.S. at 27). Moreover, "[t]he investigatory stop must be justified at its inception[,] and the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the governmental intrusion upon the constitutionally protected interests of the private citizen." *Timmsen*, 2016 IL 118181, ¶ 9.

¶ 14 In judging the police officer's conduct, this court applies an objective standard and considers, " 'would the facts available to the officer at the moment of the seizure or the search

"warrant a man of reasonable caution in the belief" that the action taken was appropriate?' " *Timmsen*, 2016 IL 118181, ¶ 9 (quoting *Terry*, 392 U.S. at 21-22). When evaluating a vehicle stop's validity, "we consider 'the totality of the circumstances—the whole picture.' " (Internal quotation marks omitted.) *Timmsen*, 2016 IL 118181, ¶ 9 (quoting *United States v. Sokolow*, 490 U.S. 1, 8 (1989)). "If reasonable suspicion is lacking, the traffic stop is unconstitutional and evidence obtained as a result of the stop is generally inadmissible." *People v. Gaytan*, 2015 IL 116223, ¶ 20, 32 N.E.3d 641.

¶ 15        An officer may justifiably stop a vehicle based on his observation of a traffic violation. *People v. Sorenson*, 196 Ill. 2d 425, 433, 752 N.E.2d 1078, 1084 (2001). Here, the State asserted defendant violated section 11-801(a)(2) of the Vehicle Code (625 ILCS 5/11-801(a)(2) (West 2016)) because he exited the intersection by entering the farthest, instead of the nearest, westbound lane of traffic. Section 11-801(a)(2) provides the following:

> "Required position and method of turning. (a) The driver of a vehicle intending to turn at an intersection shall do so as follows:
>
> ***
>
> (2) The driver of a vehicle intending to turn left at any intersection shall approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle, and after entering the intersection, the left turn shall be made so as to leave the intersection in a lane lawfully available to traffic moving in such direction upon the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection." 625 ILCS 5/11-801(a)(2) (West 2016).

In this case, pursuant to the State's interpretation of the statute, defendant was required to use the nearest westbound lane of traffic. We disagree.

¶ 16        A court's primary objective in construing a statute "is to give effect to the legislature's intent, presuming the legislature did not intend to create absurd, inconvenient or unjust results." *Gaytan*, 2015 IL 116223, ¶ 23. "The best indication of that intent is the statutory language, given its plain and ordinary meaning." *Gaytan*, 2015 IL 116223, ¶ 23. "If possible, the court must give effect to every word, clause, and sentence ***." *People v. Ellis*, 199 Ill. 2d 28, 39, 765 N.E.2d 991, 997 (2002). A court "must not read a statute so as to render any part inoperative, superfluous, or insignificant; and it must not depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express." *Ellis*, 199 Ill. 2d at 39. The construction of a statute presents a question of law, which we review *de novo*. *Gaytan*, 2015 IL 116223, ¶ 23.

¶ 17        The first sentence of section 11-801(a)(2) is a compound sentence and states (1) the law as to what lane—"the extreme left-hand lane"—a driver must be in when *approaching an intersection* to make a left turn and (2) the law as to what lane—"a lane lawfully available to traffic moving in such direction upon the roadway being entered"—the driver should use when *exiting the intersection*. The second sentence of subsection (a)(2), which is the focus of the State's argument, states the law as to what the driver should do *within the intersection*: "Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection."

¶ 18        Pursuant to a plain reading of section 11-801(a)(2), which we do not find to be ambiguous, defendant did not violate the law by exiting the intersection into the farthest westbound lane of

traffic on Empire Street. For this court to agree with the State's interpretation of this subsection, we would have to depart from the plain language of the statute by reading into the statute exceptions, limitations, or conditions the legislature did not express, and we would have to deem other parts of the statute superfluous. This court would have to determine the legislature intended (1) for the last sentence of subsection (a)(2) to be read to restrict what lane a driver could exit an intersection—without any language in the sentence to that effect—and (2) for language in the first sentence—"the left turn should be made so as to leave the intersection *in a lane lawfully available to traffic moving in such direction*" (emphasis added)—to be ignored. We will not interpret this statute in the manner suggested by the State. Based on the evidence and a plain reading of the unambiguous language of section 11-801(a)(2), defendant did not violate any statute justifying the traffic stop by exiting the intersection in the farthest westbound lane of Empire Street.

¶ 19    The State's reliance on *State v. Steen*, 2004 MT 343, ¶ 8, 324 Mont. 272, 102 P. 3d 1251, and *State v. Graham*, 2014-Ohio-3283, 17 N.E.3d 112, ¶ 19, as persuasive authority that section 11-801(a)(2) requires a driver to exit an intersection in the nearest lawful lane of traffic is misplaced. Those cases are easily distinguishable as the statutes at issue in both of those cases are not written as clearly as section 11-801(a)(2). Those statutes contained the same language:

> "At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection *the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered*. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection." (Emphasis added.) *Steen*, 2004 MT 343, ¶ 8; *Graham*, 2014-Ohio-3283, *¶* 12.

Section 11-801(a)(2) is more specific as to what lane a driver making a left turn can exit an intersection, stating in relevant part, "the left turn shall be made so as to leave the intersection in a lane lawfully available to traffic moving in such direction upon the roadway being entered." This language gave defendant the right to leave the intersection in either westbound lane of Empire Street as both westbound lanes were available to traffic moving straight through the intersection on Empire Street.

¶ 20    As we have concluded section 11-801(a)(2) is not ambiguous, the State's alternative argument "the traffic stop was still lawful due to the ambiguity of the statutory language" also fails. The United States Supreme Court in *Heien v. North Carolina*, 574 U.S. ___, ___, 135 S. Ct. 530, 536, 539 (2014), did hold reasonable suspicion justifying a traffic stop "can rest on a mistaken understanding of the scope of a legal prohibition" as long as the mistaken understanding of the law was objectively reasonable. With regard to the objective standard, the Court stated, "We do not examine the subjective understanding of the particular officer involved." *Heien*, 574 U.S. at ___, 135 S. Ct. at 539. In addition, the Court declared, "[A]n officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Heien*, 574 U.S. at ___, 135 S. Ct. at 539.

¶ 21    Justice Kagan, who was joined by Justice Ginsburg, concurred with the majority's reasoning but wrote separately to elaborate on the majority's holding regarding the objectively reasonable standard. According to Justice Kagan:

"A court tasked with deciding whether an officer's mistake of law can support a seizure thus faces a straightforward question of statutory construction. If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not. As the Solicitor General made the point at oral argument, the statute must pose a 'really difficult' or 'very hard question of statutory interpretation.' [Citation.] And indeed, both North Carolina and the Solicitor General agreed that such cases will be 'exceedingly rare.' " *Heien*, 574 U.S. at ___, 135 S. Ct. at 541 (Kagan, J., concurring, joined by Ginsburg, J.).

In this case, the plain language of section 11-801(a)(2) does not present a difficult or hard question of statutory interpretation. The statute clearly allows a driver making a left turn to exit the intersection into any available lane of traffic moving in the proper direction. The officer's misunderstanding of section 11-801(a)(2) was not objectively reasonable. As a result, the officer's stop of defendant's vehicle was not justified.

¶ 22 As we have found the stop of defendant's vehicle was not constitutionally justified, we next turn to the State's argument the exclusionary rule should not be applied under the circumstances in this case. The State bases its argument on our supreme court's opinion in *People v. LeFlore*, 2015 IL 116799, ¶ 22, 32 N.E.3d 1043. In *LeFlore*, the court noted "[t]here is no constitutional right to have the evidence resulting from an illegal search or seizure suppressed at trial." *LeFlore*, 2015 IL 116799, ¶ 22. "[A]pplication of the exclusionary rule has been restricted to those 'unusual cases' where it can achieve its sole objective: to deter future fourth amendment violations." *LeFlore*, 2015 IL 116799, ¶ 22.

¶ 23 According to our supreme court, the deterrent benefits of suppression must outweigh its heavy costs for the exclusionary rule to be appropriate. *LeFlore*, 2015 IL 116799, ¶ 23. A court must look at the particular circumstances in a case to determine whether (1) a police officer acted with an objectively reasonable good faith belief his action was within the law or (2) the officer's conduct involved only simple, isolated negligence. If the officer's action meets either of these criteria, no illicit conduct needs to be deterred by suppressing evidence discovered as a result of the police action and the evidence should not be suppressed. *LeFlore*, 2015 IL 116799, ¶ 24. When determining whether this good-faith exception to the exclusionary rule applies in a case, "a court must ask the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." (Internal quotation marks omitted.) *LeFlore*, 2015 IL 116799, ¶ 25.

¶ 24 In this case, the objectively ascertainable question would be whether a reasonably well-trained officer would have known the traffic stop was not valid because the defendant did not violate section 11-801(a)(2) of the Vehicle Code (625 ILCS 5/11-801(a)(2) (West 2016)). We note the State has not identified any binding judicial authority interpreting section 11-801(a)(2) upon which a law enforcement officer could have in good-faith relied upon to require a driver to exit an intersection into the nearest lawfully available lane of traffic when making a left turn.

¶ 25 This is also not a case involving a broad question of constitutional law, where an objectively reasonable police officer might have based his decision on the broad legal landscape around the country. This is a simple question whether a specific provision of the Vehicle Code was violated.

¶ 26     Finally, we note the last paragraph of the majority's analysis in *LeFlore* resolves this issue in defendant's favor. Our supreme court noted a police officer who is acting in defiance of the plain language of an existing statute or judicial order—instead substituting his own erroneous interpretation of the statute or decision—cannot be considered as acting in an objectively reasonable manner. *LeFlore*, 2015 IL 116799, ¶ 69. As a result, the trial court did not err in excluding evidence arising out of defendant's traffic stop.

¶ 27                                III. CONCLUSION
¶ 28     For the reasons stated, we affirm the circuit court's judgment.

¶ 29     Affirmed.