472

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LENNETT OAKLEY, Appellant.

*Opinion filed September 23, 1999.*

RATHJE, J., took no part.

G. Joseph Weller, Deputy Defender, and Patrick M. Carmody, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

James E. Ryan, Attorney General, of Springfield, and Paul A. Logli, State's Attorney, of Rockford (Joel D. Bertocchi, Solicitor General, and William L. Browers and Alvin S. Ratana, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Lennett Oakley, was indicted in the circuit court of Winnebago County on one count of home invasion (720 ILCS 5/12—11(a) (West 1996)) and one count of aggravated battery (720 ILCS 5/12—4(b)(1) (West 1996)) in violation of the Criminal Code of 1961. Defendant was tried by a jury and found guilty of both offenses. He was subsequently sentenced to concurrent prison terms of six years for home invasion and two years for aggravated battery. The appellate court, one justice dissenting, affirmed, rejecting defendant's contention that he could not be convicted under the home invasion statute because he had not entered "the dwelling of another," in this case, his *former* marital residence. 299 Ill. App. 3d 684. The defendant filed a petition for leave to appeal to this court pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315), raising that single issue. We affirm. The facts relevant to our disposition are as follows.

At trial, Beverly Johnson, defendant's ex-wife, testified that she and her boyfriend, Kenneth Reaves, were sleeping together in the basement of her residence in the early morning hours of September 20, 1996, when she received a telephone call from defendant. Defendant told her, "You need to get your company out of my house. I'll give you 5 to 10 minutes, or I will call the police." Johnson stated she was "stunned" that she would receive such a call from the defendant.

According to Johnson, she and defendant had last lived together in December of 1992. She had been awarded the marital residence, located at 517 Island Avenue, Rockford, Illinois, as part of the disposition of divorce proceedings. Although she initially testified that she had "legal" title to the property, upon cross-examination, she acknowledged that defendant's name was still on the title to the real estate and on the loan

documents. She explained, "I have a sheriff's deed that was recorded. It's been recorded downtown. I have to wait so many months before I can go through the process of having his name removed." Elaborating on the divorce court's disposition, Johnson stated that the court had granted her the equity in the house and exclusive possession of it. She had changed the locks to the residence in March of 1996, around the time that defendant's probation was completed, and a "no contact" provision expired with it.

In any event, not long after she received the early-morning telephone call from defendant, Johnson saw lights in her driveway, and she arose to investigate, leaving Reaves asleep in the bed. Johnson ascended the stairs from the basement, opened her front door, and observed defendant's car in the driveway. About that time she heard a crash downstairs in the basement, and she immediately called the police. Returning to the basement, she found Reaves struggling with defendant, and she assisted Reaves in subduing him until the police arrived. Johnson identified a sledgehammer and a knife she found near the scene of the struggle as items she had never before seen in her home or in Reaves' possession. She testified that she did not give defendant permission to enter her home, and she affirmatively stated that defendant is not, and has never been, a police officer.

Kenneth Reaves testified that he had been dating Beverly Johnson for six or seven months, and he was staying overnight at her house on September 20, 1996. In the early morning hours, after Johnson had gotten out of bed, Reaves heard a crash and saw someone coming in through the basement window. The intruder confronted Reaves and stated, "Get out of my house." Reaves indicated he would leave and proceeded to gather up his clothes. Defendant then struck Reaves in the back with a sledgehammer. Reaves started walking towards

the stairway. According to Reaves, defendant again struck him in the back with the hammer. Reaves said as he started up the stairs, watching defendant out of the corner of his eye, he saw defendant raise the sledgehammer as if to strike again. Reaves then turned and engaged in a struggle with defendant, culminating in the larger man, Reaves, taking defendant to the floor and restraining him there until the police arrived. Reaves identified the sledgehammer and a knife found at the scene as items defendant had in his possession.

Jeffrey Cleaveland, a patrolman with the Rockford police department, was dispatched to 517 Island Avenue on the morning of September 20, 1996. Upon his arrival, he found one man, later identified as Reaves, restraining another man, defendant, by lying on top of him. A sledgehammer and knife were lying nearby. Cleaveland observed that Reaves had a bump on the back of his head, but otherwise appeared to be uninjured. Johnson advised Cleaveland as to what had taken place. Cleaveland noted a broken basement window near the bed where Reaves had been sleeping. Defendant was taken into custody.

After the State rested, defendant took the stand in his own behalf. Defendant testified that his last permanent address was 517 Island Avenue. He last resided there with Beverly Johnson on February 17, 1993. Thereafter, he had lived no more than three months at any given location. Defendant acknowledged that he and Johnson were divorced and that Johnson had been granted possession of the marital residence as part of the divorce proceeding. However, he denied knowing in September 1996 that a final order had been entered in the case. He stated, to the best of his knowledge, his name was still on the title to the property on the date of the incident, and on the mortgage documents.

Defendant claimed, prior to his prosecution for the instant offense, he went to his former residence almost

every day to see his daughters, and he would remain there until he went to work around 2:30 p.m. According to defendant, Johnson had to be at work by 7 a.m. Defendant would arrive at the house between 7 and 7:30 a.m., after Johnson had departed, take his youngest daughter to school, then return to the house and stay until he had to leave for work. He entered the home through the back door, which was usually unlocked.

Defendant claimed Johnson knew he stayed at the house during the day. However, he admitted he did not have Johnson's permission to be there, and once, when Johnson returned during the day and found him there, she told him to get out of her house, and he complied.

Defendant testified he had called Johnson on the night of the incident, wanting to discuss a serious matter involving their daughter. When Johnson hung up on him, he decided to go to the house, and entered by breaking the basement window with a sledgehammer. He then encountered Reaves, whom he ordered out of the house. According to defendant, Reaves was leaving, proceeding up the basement stairs, his clothes in hand, when a knife fell from his belongings. When Reaves reached down to pick it up, defendant struck him with the sledgehammer, precipitating a struggle between the two. Defendant claimed he hit Reaves because he was afraid Reaves would use the knife against him. Defendant denied that the knife, People's Exhibit No. 2, belonged to him, but he acknowledged ownership of People's Exhibit No. 1, the sledgehammer.

Under cross-examination, defendant conceded that a final order *was* entered in the divorce proceeding on March 26, 1996, approximately six months prior to the incident in question. He further acknowledged the language of the decree, which stated, "the plaintiff is granted the entire balance of the equity in the marital home and the exclusive right to the marital property lo-

cated at 517 Island Avenue, Rockford, Illinois, and shall be responsible for all expenses of same." Although the order evidently stated there was no marital debt, and thus no loan in defendant's name, defendant insisted that the loan on the house had not been paid off.

Defendant denied that he had given his address as 1430 South Court Street upon his arrest. He admitted he had stayed on South Court Street, but he testified there is no residence at 1430 South Court. Asked if the address he had given was "a lie," defendant responded, "It could be, and it could not be." Defendant did acknowledge he had not actually *lived* at the house on Island Avenue since February 17, 1993, when an order of protection was entered against him; yet he refused to concede it was not his "dwelling place," maintaining that he stayed there during the day. He stated that the "no contact" provision of his probation order, stemming from a conviction for the battery of Johnson in 1995, ended with the termination of his probation on March 13, 1996. He believed Johnson had changed the locks of the house in April of 1996.

When questioned about his actions on the night of the alleged offense, defendant admitted he had not attempted to gain access to the house by the back door, which he had claimed was always unlocked, nor did he knock on the door or ring the doorbell. He smashed the basement window with his sledgehammer and crawled inside, sledgehammer in hand. Defendant admitted he was not a police officer, he had not been given permission to enter the house on the evening in question, and he was aware there were people within.

Upon consideration of the foregoing testimony, the jury found defendant guilty of home invasion and the aggravated battery of Kenneth Reaves. He was subsequently sentenced to concurrent terms of six years' imprisonment for home invasion and two years' imprison-

ment for aggravated battery. As indicated, defendant's convictions were affirmed on appeal, and we granted his petition for further review.

In arguing before this court that defendant's conviction must be reversed, because he did not enter the "dwelling place of another," as defined in the home invasion statute, defendant relies upon prior decisions in *People v. Reid*, 179 Ill. 2d 297 (1997), and *People v. Moulton*, 282 Ill. App. 3d 102 (1996). Both are distinguishable.

In *Moulton*, a marriage between the defendant and the victim had been dissolved by a decree incorporating the terms of a marital settlement agreement. Pursuant to the provisions of that agreement, the victim was granted exclusive possession of the marital residence for a two-year period, after which the home was to be sold and the proceeds equally divided between the parties. During the two-year period, the parties retained joint title to the residence. Several days after the dissolution became final, a plenary order of protection was entered prohibiting the defendant from entering or remaining in the marital residence. That order was in effect on the date of the alleged offenses.

The *Moulton* court affirmed the trial court's dismissal of the defendant's home invasion charge. Relying upon the statements of a few legislators who expressed concern that a person might be charged with committing the crime by entering his or her "own home," the *Moulton* court focused on the state of legal title in its search for the legislature's "intent," and the meaning of the term "dwelling place of another," as employed in the home invasion statute. The court concluded:

> "It is apparent that the legislature did not intend for the home invasion statute to apply to cases of domestic violence involving married couples. It is unclear, however, whether the statute applies in cases where, as here, the parties are recently divorced and the defendant retains an ownership, but not a possessory, interest in the dwelling." *Moulton*, 282 Ill. App. 3d at 107.

Applying a "strict construction" of the statutory language, the *Moulton* court determined the statute did not apply to that defendant.

In *Reid*, this court considered the same issue, given different facts. The defendant in *Reid* rented the apartment in question jointly with the victim. Sometime thereafter, an emergency order of protection was entered, prohibiting defendant from having any contact with the victim. That order was soon supplanted by a plenary order of protection, granting the victim exclusive possession of the apartment and prohibiting defendant from entering or remaining at the apartment. Although defendant was given permission to enter the apartment on a certain date, in the presence of police, to retrieve his belongings, he came to the residence on a different day, unaccompanied by officers. An argument between the defendant and the victim on the porch of the residence evidently developed into an altercation within the residence, during the course of which defendant repeatedly struck the victim with a hammer, causing her death.

Among the issues considered by this court was the validity of defendant's conviction for home invasion. This court considered and addressed the decision in *Moulton*, reciting, as did the *Moulton* court, the "concerns" expressed by "a number of Senators" that "parties to domestic disputes would be charged under the statute" and that someone might be charged for conduct committed in his or her "own home." *Reid*, 179 Ill. 2d at 316. This court concluded:

> "In drafting the home invasion statute, the legislature thus specifically sought to exclude domestic disputes from the reach of the statute. Given the clear expression of legislative intent, we hold that a defendant does not commit the offense of home invasion when he enters a dwelling which a protective order prohibits him from entering but of which he is an otherwise lawful tenant." *Reid*, 179 Ill. 2d at 316.

In both *Reid* and *Moulton*, defendants' tenancy interests in their respective properties had not been extinguished at the time of the offenses alleged. In each case, it was defendant's existing tenancy interest that precluded a conviction for home invasion. However, in the case now before us, defendant's interest in the property *had* been extinguished by a final order in the divorce proceeding. It appears that Johnson thereby received the equity in the house, possession of the house, and was responsible for any expenses associated with the home. In short, Johnson was awarded the house and defendant retained no interest therein. Given the terms of the judgment of dissolution of marriage, the fact that defendant's name remained on the title documents is simply irrelevant. See *Cunningham v. Lawrence*, 16 Ill. 2d 201, 207 (1959); *Estate of Dompke v. Dompke*, 186 Ill. App. 3d 930, 935 (1989). Here, all the elements of home invasion were proven beyond a reasonable doubt, including defendant's unauthorized entry into the "dwelling place of another."

With respect to the facts of this case, and this defendant, we find the conviction for home invasion appropriate. Accordingly, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE RATHJE took no part in the consideration or decision of this case.