FIFTH DIVISION
June 15, 2007

No. 1-05-0917

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| JEROME HOWARD, | ) | Honorable |
| | ) | Michael P. Toomin, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant, Jerome Howard was convicted by a jury of first degree murder, predicated on felony home invasion, and was sentenced to 45 years in prison. He now appeals his conviction. We affirm.

BACKGROUND

On December 24, 2002, the decedent, James Saunders (Saunders), was shot and killed in his girlfriend's town house after defendant entered with his two nephews and confronted Saunders. At the time, Saunders' girlfriend, Sherita Pollard (Sherita), was married to defendant, but the two were estranged. Sherita lived in the town house with her two adult children, Lavita Govan (Lavita) and Alfonso Govan (Alfonso). Although defendant had lived with Sherita in the town house in the past, he no longer lived there and had never been listed on the lease. Nonetheless, defendant contends in this appeal that the town house was *his* dwelling because he

was still married to Sherita and there was no court order barring him from entering. He therefore asserts that he was improperly convicted of home invasion because the State did not prove the necessary element that he entered the dwelling place "of another."

The evidence adduced at trial showed that Sherita and defendant had dated for several years before their marriage. During that time, defendant had apparently lived with Sherita intermittently in different apartments. In 1998, before defendant and Sherita were married, he moved into Sherita's town house. At the time, Sherita's children, Lavita and Alfonso, were teenagers. Sherita, Lavita and Alfonso were the only persons listed on the town house lease. Defendant concedes that he was never on the lease. The town house rent was subsidized by the Chicago Housing Authority (CHA). Sherita paid the rent, gas, telephone, and electricity bills. Defendant testified that Sherita would not have gotten the same lease rate from CHA if it knew that he was living there and was employed.

At some point in 2001, defendant and Sherita ended their relationship. Sherita started dating Saunders. She reunited with defendant and they married on July 18, 2002. The couple separated two weeks later. Defendant moved out and took all of his personal belongings, except for his television, which was also Sherita's property, and some of his weights. He left no clothing or personal items. Defendant testified that he still had a key and that he had continued to go to the apartment. Sherita, however, testified that she took her key back, that defendant was not permitted to have a key when he moved out, and she never saw him use a key to gain access to the town house. One of Sherita's sisters testified that she dropped by the town house once, two weeks before the crime, and that defendant was present at the apartment. Sherita, however, was

2

not present.

Saunders and Sherita started dating again after she and defendant parted ways. Saunders lived in the town house off and on during the month of December 2002. He was not named on the lease, but he kept clothing there.

Sherita testified that, on the day of the crime, defendant telephoned to ask whether the two of them could celebrate Christmas together. She told him no because she was involved with someone else. She did, however, ask defendant if he could bring some candy to Lavita, who was pregnant and craving candy. Defendant brought the candy. When he arrived at the town house, he rang the doorbell and Lavita opened the door, which was locked, to let him in. During this visit, defendant again asked Sherita whether they could celebrate Christmas together. She declined and told him she was involved with someone else. Sherita testified that defendant said, "I better not catch this nigger here, or you all not going to live to see Christmas" and she told him to leave. Sherita testified that later that day defendant called her 15 to 16 times; she answered three calls before turning the ringer off.

Saunders came over at around 11 p.m. smelling of alcohol and appearing as if he had been drinking. He asked Sherita why she had not answered her telephone, and she said it was because defendant kept calling her. Defendant called and Saunders answered. They had some words and Saunders would not let defendant talk to Sherita. Defendant called Sherita's sister, Denise, and asked her to call with three-way calling so that defendant could get past Saunders to talk to Sherita. Although the testimony at trial was conflicting as to what exactly happened next, Denise apparently called two times. At some point, when Saunders answered the telephone, he

said "Suck my dick." Also, at some point, when Saunders heard Denise's voice, he gave Sherita the phone with Denise and defendant on the line. However, Sherita hung up on them.

Shortly after that, Denise showed up at the town house with her two adult children and another sister, Debbie. Denise wanted to either confront Saunders about what he said or see if Sherita was okay. In any event, Sherita, Saunders and Denise went up to Sherita's second-floor bedroom to talk. The four adult children were downstairs.

The testimony here diverges somewhat, but there was a commotion at the front door - Sherita and Lavita heard loud banging noises coming from the front door. Defendant entered with his two nephews. The three men barged past Sherita's children - Alfonso and Lavita. Defendant had no gun, but the nephews did. After going up the first flight of stairs to the first floor, the three men went up a second flight of stairs to Sherita's bedroom. Sherita and her sister, Denise, were trying to block the door. The men were shouting to open the door, and one of defendant's nephews yelled, "Bitch, if you do not open this door, I'll blow your brains out." Sherita opened the door and they entered. The two nephews had guns. Defendant ran right up to Saunders and confronted him. Saunders pulled out a gun from his waistband and held it to defendant's head. Although defendant was shouting at him, Saunders was looking in the direction of the two nephews. A struggle ensued, and Saunders was shot dead.

Everybody ran out of the house. Sherita, her two sisters and the four adult children apparently all got in Denise's car and drove the two blocks to the mother's house. Defendant arrived there and was told to leave.

Defendant was subsequently convicted of home invasion and felony murder, predicated

on home invasion. The jury did not return any verdict on a third charge of knowing and intentional first degree murder.

ANALYSIS

Defendant first argues that the prosecution did not prove an essential element of home invasion, an unauthorized entry. Defendant's argument in this appeal is that, despite what the evidence showed, the State did not prove home invasion because it could not prove he entered the dwelling place of another.

We first note that the parties disagree on the standard of review. Generally, the question on review in sufficiency of the evidence claims is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999). Based upon the evidence presented at trial, it is clear to this court that defendant would not be successful in having his conviction reversed under the usual standard. The State presented overwhelming evidence of defendant's guilt. In viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found defendant guilty beyond a reasonable doubt. We conclude that the evidence at trial was sufficient to convict defendant of home invasion.

Defendant asserts, however, that this case involves statutory interpretation of the term "dwelling place of another" which is found in the home invasion statute. 720 ILCS 5/12-11(a) (West 2002). Thus, he urges this court to conduct a *de novo* review. Defendant asserts that he cannot be found guilty of home invasion, as a matter of law, because he did not enter the

"dwelling place of another."

In support of his assertion that our standard of review is *de novo*, defendant cites one case, *People v. Swift*, 202 Ill. 2d 378, 781 N.E.2d 292 (2002), for the general proposition that statutory interpretation is reviewed *de novo*. The *Swift* court considered the issue of "what sentence could be imposed on defendant for his first degree murder conviction, based solely on the facts found by the jury." *Swift*, 202 Ill. 2d at 385, 781 N.E.2d at 296. Defendant also cites *People v. Moulton*, 282 Ill. App. 3d 102, 668 N.E.2d 1078 (1996), a case in which the court interpreted the phrase "dwelling place of another" in the context of a challenge to the sufficiency of a charging instrument. Neither *Moulton* nor *Swift*, however, involved the issue of when a criminal conviction is reviewable *de novo*, nor has defendant addressed that precise issue.

"According to the supreme court, *where there is no dispute in the underlying facts*, a criminal conviction may be reviewed *de novo*; otherwise, the conviction should not be reversed unless no rational trier of fact could find the elements of the crime proved beyond a reasonable doubt." (Emphasis added.) *People v. Anderson*, 364 Ill. App. 3d 528, 533, 848 N.E.2d 98, 103 (2006), citing *People v. Smith*, 191 Ill. 2d 408, 411-13, 732 N.E.2d 513 (2000) (noting that where the facts are not in dispute, a defendant's guilt has been said to be a question of law, which is reviewed *de novo*), and *People v. Lamborn*, 185 Ill. 2d 585, 590, 708 N.E.2d 350 (1999). In the instant case, although there was some dispute in the underlying facts, we shall consider defendant's argument relating to statutory construction because the *relevant* facts as to this precise issue are undisputed.

In *People v. Baugh*, 358 Ill. App. 3d 718, 726, 832 N.E.2d 903, 911 (2005), this court

considered a challenge to a home invasion conviction where, while the facts of that case were different than the facts here, the defendant also contended that he could not be convicted for home invasion based on an entry into his own home. In *Baugh*, the defendant had arranged for gunmen to enter his own home. As the *Baugh* court explained: "This is not a situation where the person who actually invaded the home had some ownership interest in the dwelling or was a joint tenant or resident of the property." *People v. Baugh*, 358 Ill. App. 3d at 728, 832 N.E.2d at 912. The court additionally explained that it was "possible for a defendant to be convicted of a home invasion of his own home." *People v. Baugh*, 358 Ill. App. 3d at 728 n.1, 832 N.E.2d at 912 n.1.

The cardinal rule of statutory construction is to give effect to the intent of the legislature. *People v. Hari*, 218 Ill. 2d 275, 292, 843 N.E.2d 349, 359 (2006); *People v. Baugh*, 358 Ill. App. 3d at 726-27, 832 N.E.2d at 911. The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *People v. Hari*, 218 Ill. 2d at 292, 843 N.E.2d at 359; *People v. Baugh*, 358 Ill. App. 3d at 727, 832 N.E.2d at 911. In Illinois, it is also a well-settled principle of statutory interpretation that undefined terms in a statute shall be accorded their plain and commonly understood meanings. *People v. Ward*, 215 Ill. 2d 317, 325, 830 N.E.2d 556, 560 (2005); *People v. Ellis*, 199 Ill. 2d 28, 39, 765 N.E.2d 991, 997 (2002). In construing a statute, a court is not at liberty to depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *People v. Hari*, 218 Ill. 2d at 292, 843 N.E.2d at 359; *People v. Baugh,* 358 Ill. App. 3d at 727, 832 N.E.2d at 911. If the plain language of the statute reveals legislative intent, we will give that intent effect without resorting to other interpretive aids. *People v. Hari*, 218 Ill. 2d at

292, 843 N.E.2d at 359. Only where we must resolve some ambiguity in the statutory language, may we consider extrinsic aids such as legislative history and transcripts of legislative debates. *People v. Collins*, 214 Ill. 2d 206, 214, 824 N.E.2d 262, 266 (2005). "The statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous." *People v. Jones*, 214 Ill. 2d 187, 193, 824 N.E.2d 239, 242 (2005); *People v. Ellis*, 199 Ill. 2d 28, 39, 765 N.E.2d 991 (2002). With these principles in mind, we shall address defendant's argument that he did not enter the "dwelling place of another."

The home invasion statute provides, in pertinent part, as follows:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the *dwelling place of another* when he or she knows or has reason to know that one or more persons is present or he or she knowingly enters the dwelling place of another and remains in such dwelling place until he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon, other than a firearm, uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or

(2) Intentionally causes any injury, except as provided in subsection (a)(5), to any person or persons within such dwelling place, or

(3) While armed with a firearm uses force or threatens the imminent use of force upon any person or persons within such dwelling

place whether or not injury occurs, or

(4) Uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs and during the commission of the offense personally discharges a firearm, or

(5) Personally discharges a firearm that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person within such dwelling place, or

(6) Commits, against any person or persons within that dwelling place, a violation of Section 12-13, 12-14, 12-14.1, 12-15, or 12-16 of the Criminal Code of 1961.

* * *

(d) For purposes of this Section, '*dwelling place of another*' *includes a dwelling place where the defendant maintains a tenancy interest but from which the defendant has been barred by a divorce decree, judgment of dissolution of marriage, order of protection, or other court order.*" (Emphasis added.) 720 ILCS 5/12-11(a)(1) through (a)(6), (d). (West 2002).

In his briefs, defendant contended that subsection (d) set forth a bright-line rule with respect to the statute's application in domestic disputes between married couples. Defendant further acknowledged the necessity to avoid a "murky application" of the statute in the case of certain disputes between married couples. Indeed, subsection (d) was enacted shortly after the

case of *People v. Reid*, 179 Ill. 2d 297, 688 N.E.2d 1156 (1997), a case which contained a strong dissent on the very issue that the language of subsection (d) now addresses. Nonetheless, rather than discuss the plain language of subsection (d), enacted in 1998, defendant launched into a discussion of the legislative history of the *original* statute that had been enacted in 1978.

Defendant also relied heavily on the cases of *People v. Reid*, 179 Ill. 2d 297, 688 N.E.2d 1156 (1997), and *People v. Moulton*, 282 Ill. App. 3d 102, 668 N.E.2d 1078 (1996), ignoring the fact that those cases have now been superseded since the legislature amended the statute by enacting subsection (d), which essentially addressed the necessity of a possessory interest and adopted the reasoning of the dissent in *People v. Reid*, 179 Ill. 2d 297, 688 N.E.2d 1156 (1997). In his dissent in *People v. Reid*, Justice Miller noted that the case before the court involved a case "in which the defendant retained an ownership interest, but not a possessory interest, in the subject property." *People v. Reid*, 179 Ill. 2d at 318, 688 N.E.2d 1156 (1997) (Miller, J. dissenting). Justice Miller concluded that, regardless of the defendant's ownership interest, a home invasion occurred because defendant had no possessory interest based upon the order of protection.

As the amendment makes clear, contrary to the reasoning of *Reid* and *Moulton*, unless a defendant has *both* the requisite tenancy interest *and* a possessory interest in the dwelling place, he can be charged with home invasion. Defendant fails to recognize the difference between the tenancy interest being no longer *sufficient* and the tenancy interest being no longer *necessary*. When the legislature amended the home invasion statute shortly after the decision in *Reid*, there was no disagreement regarding the necessity of the tenancy interest. The only area that needed

clarification was how the lack of a possessory interest affected a defendant's ability to be charged under the statute. The plain language of subsection (d) now describes situations where a defendant who has the requisite tenancy interest nonetheless does not have the possessory interest – a possessory interest that the *Reid* and *Moulton* courts had presumed was inviolate. The tenancy interest alone is no longer *sufficient*. But it is still required.

Subsection (d) clarified that, contrary to the decisions in *Reid* and *Moulton*, an estranged spouse cannot avoid prosecution for home invasion unless he ha*s both* a tenancy interest and a possessory interest. Here, defendant had neither. He had no tenancy interest because he had no legal title to the premises. He had no possessory interest because he had no legal title to the premises, and also because he was no longer living in the town house.[1]

Defendant claims that because he and Sherita were still married, his entry into Sherita's town house was a "domestic dispute." Defendant's entire argument is based on his assertion that "the legislature clearly intended to exclude domestic disputes from the reach of the home invasion statute." This assertion is overly broad and incorrect. This statement is taken out of context from a statement made in *Reid* which, as we have explained, has been superseded by statute. While the legislature may have discussed domestic disputes when it enacted the original bill, it did so in the context of a married couple with a joint tenancy interest, *i.e.*, where the

---

[1] As we shall discuss later in this opinion, the fact that defendant was no longer currently residing in the town house defeats his argument that, despite his lack of a tenancy interest, the town house was his dwelling place under the reasoning of *People v. Delacruz*, 352 Ill. App. 3d 801, 817 N.E.2d 191, 198 (2004).

dwelling *actually was* the defendant's own home and whether it should apply when a defendant entered his or her "own home." This tenancy interest was present in *Reid* and *Moulton* and determined to be sufficient, even without a possessory interest. In any event, any ambiguities that might have existed at the time *People v. Reid* was decided, were subsequently addressed when the legislature enacted subsection (d).

In his briefs, defendant nowhere addressed the plain language of subsection (d), particularly the term "tenancy interest." Moreover, defendant did not distinguish a tenancy interest from a possessory interest. Finally, defendant failed to adequately address the Illinois Supreme court case of *People v. Oakley*, 187 Ill. 2d 472, 719 N.E.2d 654 (1999), and its reliance on the existence, or lack thereof, of a "tenancy interest" with respect to the interpretation of the statute's phrase "dwelling place of another." We granted oral argument to address these concerns.

During oral argument, however, defendant posited a novel theory and now invites this court to judicially create a new type of tenancy interest such that upon marriage, a spouse has an automatic tenancy interest in his spouse's property, so long as both of them live there together as a married couple at some point. Defendant claims that this would effectuate the legislative intent that the home invasion statute not apply to domestic disputes. Under his novel theory, this judicially created tenancy interest would apparently also involve some continuing possessory interest in the estranged spouse's dwelling that can only be extinguished by a court order similar to those found in subsection (d) of the statute. Because defendant does not distinguish the tenancy interest from the possessory interest, defendant does not explain how this tenancy

interest is extinguished. The practical effect of that would be that defendant in this case could continue to enter Sherita's town house without her permission, even after she threw him out, until such time as she gets a divorce decree or some type of court order barring him from entering. We decline defendant's invitation to create a new type of tenancy interest.

Defendant has failed to recognize that, without Sherita's permission to stay there, her town house was never defendant's "own home." Even under the preamended version of the statute, the Illinois Supreme Court acknowledged the necessity of the prerequisite legal tenancy interest. *People v. Oakley*, 187 Ill. 2d 472, 719 N.E.2d 654 (1999). It is defendant's position that the marital relationship *per se* is a dispositive factor under the home invasion statute; thus, his reliance on the phrase "marital residence," which does not appear in the statute. Contrary to defendant's position, the court in *People v. Oakley* held that the defendant entered the "dwelling place of another," for purposes of home invasion statute, when he entered *his former marital residence*. The *Oakley* court reasoned that the dwelling was not that of the defendant because he no longer had a tenancy interest – it having been extinguished by a final order in the divorce proceeding. Defendant's attempt to distinguish his own nonexistent tenancy interest from the *Oakley* defendant's extinguished tenancy interest is a distinction without a difference.

In *People v. Gwinn*, 366 Ill. App. 3d 501, 851 N.E.2d 902 (2006), the defendant argued that his conviction for home invasion should be reversed because the statute was not intended to apply to "domestic disputes." The *Gwinn* court did not discuss the amended statute and instead relied on *Oakley*. The court decided that the facts there presented an even stronger case than *Oakley* for finding the defendant guilty of home invasion. Although the court noted that the

13

parties in *Gwinn* were not married, it also stressed that, with respect to the defendant, "nothing in the record indicate[d] that he was named on her lease, he had vacated the premises months earlier, and his authority to enter the premises was limited to taking the children to day care." *People v. Gwinn*, 366 Ill. App. 3d at 521-22, 851 N.E.2d at 920. Thus, even apart from the statutory amendment's explicit requirement of the tenancy interest, its implicit requirement under the original home invasion statute has been recognized by the courts.

Defendant has additionally argued that, in order to determine whether Sherita's town house was the "dwelling place of another" or his own dwelling place, this court must go beyond the question of whether he had a legal tenancy interest because he had no "formal" tenancy agreement with Sherita. Defendant cites *People v. Delacruz*, 352 Ill. App. 3d 801, 810, 817 N.E.2d 191, 198 (2004), and *People v. Taylor*, 318 Ill. App. 3d 464, 742 N.E.2d 357 (2000), in support of this contention. Defendant's reliance on those cases is misplaced. Both *Delacruz* and *Taylor* are inapposite because they involved defendants who were *currently living* in the dwellings at issue. In the instant case, it is undisputed that defendant was no longer living in the town house on the night of the shooting. Thus, while defendant may have had a possessory interest in the town house during the time Sherita permitted him to live there with her, that possessory interest ceased to exist when defendant moved out.

Because the plain and unambiguous language of subsection (d) of the home invasion statute clearly requires a tenancy interest in the premises, there is no need to look to legislative history to divine the legislature's intent. Nonetheless, we do note that the legislative history confirms our interpretation of the statute in this case. During the legislative debates on what

14

would become Public Act 90-787, Senator Geo-Karis explained that the amendment "redefines 'dwelling place of another' under the home invasion statute to allow for the prosecution of estranged spouses who break into a residence *when they have some legal title to* but are prohibited from entering by court order." (Emphasis added.) 90th Ill. Gen Assem., Senate Proceedings, March 24, 1998, at 40 (statements of Sen. Geo-Karis). Thus, had defendant here had legal title to the premises, Sherita would have had to get a court order prohibiting defendant's entry by extinguishing his possessory interest before he could have been charged with home invasion. Because defendant here never had legal title, there was no need for Sherita to get a court order prohibiting defendant from entering *her* residence.

If the legislature intended subsection (d) to be interpreted the way defendant interprets it, the legislature could have easily said: " 'dwelling place of another' does not includes a dwelling place where the defendant does not maintain a tenancy interest provided he is still married to the person who maintains a tenancy interest" or even said " 'dwelling place of another' does not include a dwelling place where the defendant formerly resided with a spouse who maintains a tenancy interest but from which the defendant has been barred by a divorce decree, judgment of dissolution of marriage, order of protection, or other court order." Defendant reads into the statute an exception that is not in the text of the statute. But we have earlier explained that courts may not depart from plain language of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *People v. Hari*, 218 Ill. 2d 275, 292, 843 N.E.2d 349 (2006). Moreover, defendant's interpretation renders superfluous the term "tenancy interest," which is contrary to the rules of statutory interpretation. *People v. Jones*, 214 Ill. 2d 187, 193,

15

824 N.E.2d 239, 242 (2005); *People v. Ellis*, 199 Ill. 2d 28, 39, 765 N.E.2d 991 (2002).

The following relevant facts were undisputed: (1) on the date that the shooting and alleged home invasion occurred, defendant and Sherita were still married, but defendant no longer lived in the town house and was living elsewhere; (2) defendant had resided in the town house with Sherita in the past, which included two weeks as a married couple; (3) defendant moved out of Sherita's town house and took his belongings with him; (4) Sherita took back her town house key from defendant and, to her knowledge, he never had a key to her home after he moved out; (5) nobody gave defendant permission to enter the town house on the night of the shooting; and (6) although defendant *at one time* had lived there with Sherita's permission,[2] defendant was not named in the lease and *never* had a tenancy interest in the CHA-subsidized town house. Defendant is incorrect that, under these undisputed facts, Sherita's town house was his own dwelling place as opposed to the dwelling place of another as a matter of law. In sum, under the plain language of the home invasion statute, nothing prohibited the jury from deciding that defendant entered the dwelling place of another. The State satisfied its burden of proving beyond a reasonable doubt that defendant entered the dwelling place of another without authority.

Defendant has also claimed that he was denied his right to a fair trial based upon three

---

[2] There is also evidence in the record indicating that Sherita had no authority, in the first instance, to give permission to defendant, a convicted felon, to be on the CHA-subsidized premises, let alone *reside* there. In any event, we need not further address this issue because, at the time of the crime, it is undisputed that defendant *did not* reside there.

instances of prosecutorial misconduct. In determining whether a defendant has been denied a fair trial, the question is "whether a substantial right has been affected to such a degree that we cannot confidently state that the defendant's trial was fundamentally fair." *People v. Blue*, 189 Ill. 2d 99, 138, 724 N.E.2d 920, 941 (2000). None of defendant's claims of prosecutorial misconduct denied his right to a fair trial.

Defendant first asserts that the State diminished its burden of proof by asking him on cross examination whether it was true that Saunders would still be alive if defendant had just stayed home on the night of the murder. It is a fundamental doctrine of our criminal justice system that a defendant is presumed innocent until he is proved guilty of an offense beyond a reasonable doubt. *People v. Weinstein*, 35 Ill. 2d 467, 469-70, 220 N.E.2d 432, 433 (1966). Defendant contends that the State effectively diminished its burden of proof from what was legally required to a proximate cause theory of the case. The State counters that this question was proper because it was intended to discredit defendant's testimony that after the last telephone call to Sherita's town house, he proceeded to go over there with his nephews, not with the intention of killing anyone but, rather, to pick up his belongings.

We do not believe that defendant was denied his right to a fair trial as a result of the State's questions on cross-examination. The record reflects that the nature of the State's burden of proof in this case was made abundantly clear to the jurors. The trial judge explained the burden of proof in opening remarks to the jurors. Moreover, the jurors were properly instructed at the close of trial that the State bore the burden of proof, that the burden remained on the State throughout the case, and that defendant was not required to prove his innocence.

Defendant also argues that the State engaged in deliberate subterfuge by introducing photographs showing that the door had been broken down when the parties had already stipulated that it was the police who broke the door down and the pictures falsely appeared to be definitive proof of a forced entry. A trial court's determination concerning the admissibility of evidence is not overturned absent a clear abuse of discretion. *People v. Robinson*, 217 Ill. 2d 43, 62, 838 N.E.2d 930, 941 (2005).

While admission of the photograph may not have been probative of any issue, and its admission may have been error, we cannot say its admission denied defendant a fair trial. As the State specifically told the jurors in closing argument, it was not arguing that defendant "busted through the front door." Instead, the State argued that the evidence showed that defendant used force to gain entry, whether he used a key to open the town house door or not. As the State notes, both Sherita and Lavita heard a bang at the door immediately before defendant appeared in the house. Additionally, Sherita's sister, Denise, said in her statement to police that she heard a rumbling downstairs and later realized "it was [defendant] and two other guys forcing their way through the front door downstairs.

Defendant's final contention is that the State engaged in a persistent campaign to "dirty up" defendant by using his prior convictions to suggest his guilt for the offenses here and by repeated gratuitous references to defendant's prior arrests.

It was not the State but, rather, defendant, who introduced evidence of his prior convictions at trial. Defendant testified on direct examination that he lived at Sherita's town house from 1998 until December 17, 2002, except for the time periods he was in prison.

Defendant told the jurors that he was convicted in 1998 of possession of a controlled substance; convicted again in 2001 of possession of a controlled substance; and then convicted in 2002 for unlawful use of a weapon by a felon.

On cross-examination, the State elicited testimony from defendant that notwithstanding his testimony on direct that he lived primarily with Sherita from 1998 through 2002, every single time he had contact with the police he gave his address as that of his mother's house, not Sherita's town house. The State did not allude to defendant's "arrests." The reference made to contacts with the police by the State did not constitute direct evidence of prior criminality. "When evidence of prior criminality is not direct, but merely inferential, the determinative issue is the probative and prejudicial effect of the nexus between the admitted and prior criminality." *People v. Braddock*, 247 Ill. App. 3d 1091, 1096, 618 N.E.2d 413, 416-417 (1993). The reference to contacts here falls under the *Braddock* rule because there were no specifics given regarding whether criminal activity was involved, what the offenses might have been, or on what bases defendant was suspected of committing the offenses. Furthermore, because the State had the burden of proving that defendant unlawfully entered the dwelling place of another, evidence that he consistently represented his home address as someplace other than Sherita's town house was highly probative.

In accordance with the foregoing, we conclude that defendant was properly convicted of home invasion. We affirm his conviction.

Affirmed.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.