2020 IL App (1st) 171399
No. 1-17-1399
December 31, 2020
Modified Upon Denial of Rehearing
April 26, 2021

FIRST DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 16 CR 2005 |
| v. | ) | |
| | ) | The Honorable |
| MARIO LAWRENCE, | ) | Luciano Panici, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE WALKER delivered the judgment of the court, with opinion. Justices Pierce and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    The trial court found Mario Laurence guilty of home invasion. (Although the State spelled the defendant's name "Lawrence" on the indictment, the defendant clarified in his testimony that he spells his name "Laurence.") In support of his motion for a new trial, Laurence presented a purported lease that listed him as a tenant of the home he allegedly invaded. The trial court denied the motion for a new trial, entered an order of protection against Laurence, and assessed certain fines, fees, and costs as part of Laurence's sentence. Laurence argues on appeal

that the State did not prove home invasion, the court did not meet the statutory requirements for an order of protection, and the court made mistakes in its assessment of fines, fees, and costs.

¶ 2          We hold that the purported lease constitutes unrefuted admissible evidence that the lease named Laurence as a tenant, but we affirm the conviction for home invasion because the victim had thrown Laurence out of the home. We agree with Laurence that the trial court did not meet the statutory requirements for entry of an order of protection. Supreme court rules preclude us from addressing the argument about fines, fees, and costs.

¶ 3                                        I. BACKGROUND

¶ 4          Tasha Arrington married Laurence in 2014, and they shared a house in Sauk Village. In July 2015, Laurence left after a fight with Arrington. Arrington put his clothes outside the house and did not permit him to reenter. On January 5, 2016, Laurence entered Arrington's bedroom and told Arrington's boyfriend, Wardell Williams, to leave. Arrington called police around 3:30 a.m. to report a home invasion in progress. Laurence left before police arrived. Police later arrested Laurence. A grand jury indicted Laurence on charges of home invasion and kidnaping.

¶ 5          At the bench trial, Arrington testified that she changed the locks on the house when she kicked Laurence out in July 2015. They arranged for times for him to see his children. When Arrington picked up the children from a visit on January 4, 2016, she reminded Laurence that they had divorce proceedings scheduled for the following day. She awoke in the middle of the night when Laurence, in her bedroom, told her and Williams to "Get the F up." Laurence said to Williams, "what the F you doing in my house, this my wife, get up before I blow your head off." After Williams left, Laurence punched Arrington in the face, and then on her sides as she curled

2

into a ball and covered her face. The beating stopped, the door slammed, and Arrington looked up to see her 10-year-old daughter crying. Arrington told her daughter to dial 911. Arrington checked the house to make sure all doors were locked and Laurence had gone. The officer who responded to the call checked the house with her and found a window broken in the attached garage and a brick inside the garage under the broken window.

¶ 6        Williams corroborated Arrington's testimony about being awoken by Laurence's threats, and Williams's exit. The parties stipulated that Officer Bugajski would testify that he responded to the 911 call, and he found the broken garage window and the brick under the window. The parties further stipulated that Bugajski would testify that Arrington's face had swollen where Arrington said Laurence hit her.

¶ 7        Laurence testified that he always retained his keys to the house, and Arrington must not have changed the locks because his keys continued to work. Laurence said he lived with relatives, and for a few weeks in October 2015, he stayed in the house in Sauk Village with Arrington. He used his keys to enter the house on January 5, 2016. He did not enter through the attached garage. He did not threaten Williams, and he did not hit Arrington.

¶ 8        The court found Arrington credible and Laurence not credible. The court held that the State did not prove kidnaping, but it proved home invasion.

¶ 9        In a motion for a new trial, Laurence contended that new evidence would show he did not commit home invasion because he had a right to enter the house. The court heard evidence in support of the motion. Lyn Taylor testified that, in November 2014, Arrington and Laurence came to the rental store Taylor managed. For the merchandise Arrington and Laurence sought to rent, they needed to prove residency. They presented to Taylor a copy of a document and told her the

3

document was their lease for their Sauk Village home. The document Taylor identified as the one Arrington used lists both Arrington and Laurence as tenants of that home.

¶ 10    The trial court first said that Taylor apparently could not authenticate the document, then held that even if the lease named Laurence as a tenant, he remained guilty of home invasion because Arrington had thrown him out and changed the locks. The court sentenced Laurence to six years in prison and assessed fines, fees, and costs.

¶ 11    Arrington petitioned for an order of protection, restating the testimony about the incident on January 5, 2016, as grounds for the order. The court heard Arrington's brief testimony in support of the petition and said, "All right. Order of protection is granted." The written order of protection includes no further findings. Laurence now appeals.

¶ 12                                II. ANALYSIS

¶ 13    On appeal, Laurence argues (1) his rights as a tenant preclude a finding that he committed home invasion, (2) the court failed to make the findings necessary for an order of protection, and (3) the court erred in its assessment of fines and fees.

¶ 14                                A. Home Invasion

¶ 15    Laurence's appeal raises a question of law as to whether a person can commit a home invasion in violation of section 19-6 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/19-6 (West 2016)) when the lease for the invaded property lists him as a tenant. Because Laurence raises a question of the interpretation of a statute, we review the issue *de novo*. *People v. McFadden*, 2016 IL 117424, ¶ 26.

¶ 16        The State contends that Laurence failed to authenticate the lease. Laurence offered the putative lease as evidence that he retained an interest in the house as a tenant. He asks the court to accept the document as proof of that interest. We find that Illinois Rule of Evidence 803(15) (eff. Apr. 26, 2012) governs the document's admissibility. That rule provides:

> "The following are not excluded by the hearsay rule ***:
>
> * * *
>
>     (15) Statements in Documents Affecting an Interest in Property. A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document have been made inconsistent with the truth of the statement or the purport of the document." Ill. R. Evid. 803 (eff. Apr. 26, 2012).

¶ 17        We found no case interpreting the rule, and few cases from other jurisdictions interpreting similar rules. Rule 803(15) of the Michigan Rules of Evidence (Mich. R. Evid. 803(15) (eff. Jan. 2, 2018)) matches the language of Rule 803(15) of the Illinois Rules of Evidence (Ill. R. Evid. 803(15) (eff. Apr. 26, 2012)). In *Botsford General Hospital v. Citizens Insurance Co.*, 489 N.W.2d 137, 141-43 (Mich. Ct. App. 1992), the court found that the rule made documents admissible because of their

> "indicia of trustworthiness: (1) the circumstances in which dispositive instruments are made and the financial interests at stake promote reliability; (2) the fact that the recital is in writing eliminates the danger of inaccuracy of transmission; (3) since the statement must be germane to the purpose of the document, a protest would be

expected about an untrue fact intrinsic to the transaction; and (4) the exception does not apply if dealings with the property have been inconsistent with the tenor of the document." (Internal quotation marks omitted.)

¶ 18    We find a useful application of the rule in *Madden v. State*, 799 S.W.2d 683 (Tex. Crim. App. 1990). In *Madden*, the State sought to prove that Herbert, a murder victim, had owned a gun that Madden sold. The trial court permitted the State to present a list in Herbert's handwriting of the serial numbers of the guns he owned. The appellate court applied Texas Rule of Civil Evidence 803(15) (eff. 1983), which matches the language of the Illinois rule. *Madden*, 799 S.W.2d at 698. The *Madden* court held:

> "[R]ecitals contained in documents affecting interests in property are admissible as proof of the matters asserted and are strong evidence concerning such matters. [Citation.] This hearsay exception is based upon the reliability of such documents. [Citation.] *** [T]he court of appeals construed Texas Rule 803(15) to relate to recitals or statements made in deeds, leases, mortgages, and other such documents affecting an interest in property. *** Additionally, this Court has expressed that an exception to the hearsay rule should be liberally construed, but not mechanistically applied. [Citation.]
>
> *** [T]he document is a list of the weapons which Herbert owned and their corresponding serial numbers, thus indicating his interest in the property. Secondly, the document bears more than an adequate indicia of reliability. *** It is reasonable to assume *** that Herbert made this list for his own protection, *i.e.* insurance purposes, in case of theft or loss of one or all of

the weapons, and the recitals therein are germane to the purpose of the document." (Emphasis and internal quotation marks omitted) *Madden*, 799 S.W.2d at 698.

¶ 19      The court found no error in the admission of the list into evidence.

¶ 20      Here, Taylor testified that Arrington and Laurence gave her a copy of the lease to meet the requirements for the rental they sought. Laurence's rights as a tenant were germane to the purpose of the lease. We find Taylor's unrebutted testimony sufficient to support a finding that the document is the lease for the Sauk Village home.

¶ 21      Section 19-6 of the Criminal Code provides:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present or he or she knowingly enters the dwelling place of another and remains in the dwelling place until he or she knows or has reason to know that one or more persons is present *** and

***

(2) Intentionally causes any injury *** to any person or persons within such dwelling place ***

* * *

(d) For purposes of this Section, `dwelling place of another' includes a dwelling place where the defendant maintains a tenancy interest but from which

7

the defendant has been barred by a divorce decree, judgment of dissolution of marriage, order of protection, or other court order." 720 ILCS 5/19-6 (West 2016).

¶ 22        No divorce decree, order of protection, or other court order barred Laurence from the Sauk Village home. The State, relying on *People v. Howard*, 374 Ill. App. 3d 705 (2007), argues that Laurence had no right to enter the property because he no longer lived there. The *Howard* court held that "an estranged spouse cannot avoid prosecution for home invasion unless he has both a tenancy interest and a possessory interest. *** [Defendant] had no possessory interest *** because he was no longer living in the town house." (Emphasis omitted.) *Howard*, 374 Ill. App. 3d at 712.

¶ 23        *Howard* accords with the reasoning of cases from other jurisdictions interpreting similar home invasion and burglary statutes. In *Commonwealth v. Robbins*, 662 N.E.2d 213, 220 (Mass. 1996), the court held that in determining a defendant's right to enter his or her spouse's or ex-spouse's property, the trier of fact should consider "the marital status of the parties, *** the existence of any legal orders against the defendant, extended periods of separation, the names on leases or documents of title, the acknowledgment by the defendant that he has no right to enter the premises, and the method of entry." See also *People v. Sears*, 401 P.2d 938, 944 (Cal. 1965). The court in *People v. Hollenbeck*, 944 P.2d 537, 539 (Colo. App. 1996), applied the *Robbins* factors in a case factually similar to the case before us. The *Hollenbeck* court said:

> "Defendant's wife testified that approximately two and one-half months before the burglary they had had an argument and separated and she had told him that she wanted a divorce and that he was no longer welcome in the home. Accordingly, he left and took many of his personal belongings, including most of

8

his clothes. She later informed defendant that she had seen an attorney in regard to filing a divorce and that she had changed the locks on the home." *Hollenbeck*, 944 P.2d at 539-40.

¶ 24 The court found the evidence sufficient to sustain a burglary conviction. *Hollenbeck*, 944 P.2d at 540.

¶ 25 According to Arrington's testimony, which the trial court found credible, Arrington changed the locks on the home and put Laurence's clothing outside when he left the home in July 2015. Laurence did not live in the Sauk Village home when he entered it on January 5, 2016. His use of a brick, breaking a window to gain entry, further supports a finding that he had no right to enter. See *Parham v. State*, 556 A.2d 280, 284 n.3 (Md. Ct. Spec. App. 1989).

¶ 26 Applying the reasoning of *Howard*, *Robbins*, and *Hollenbeck*, we find that the evidence as a whole shows that Laurence had no right to enter the Sauk Village home during the night of January 5, 2016, despite the inclusion of his name on the lease. The evidence supports the trial court's finding that Laurence committed home invasion.

¶ 27 In a petition for rehearing Laurence argues (1) the trial court should have found his testimony credible and Arrington's testimony not credible; (2) this court misapplied *Howard*, improperly relying on cases from other jurisdictions involving burglary; and (3) the evidence did not prove he knowingly entered the dwelling place of another.

¶ 28 Laurence contends that the lease shows he testified truthfully, and Arrington did not, because the lease lists him as a second tenant. Arrington testified on cross-examination that she signed the lease. On redirect, she said Laurence's "name was not on the lease." Laurence testified that he signed the lease. The lease Laurence presented in court bears only Arrington's signature, not

Laurence's. Laurence's printed name appears on the lease as the name of a second tenant. Laurence's false testimony that he signed the lease provides no grounds for overturning the trial court's credibility assessment.

¶ 29     Laurence next contends that *dicta* in *Howard* binds this court. The State charged Howard with invading the home of his wife, Sherita, after Sherita threw him out. The *Howard* court noted that the legislature amended the home invasion statute to clarify that a court may find a defendant guilty of invading a home even when the defendant has some legal title to the home. The court said, "the amendment redefines dwelling place of another under the home invasion statute to allow for the prosecution of estranged spouses who break into a residence when they have some legal title to but are prohibited from entering by court order." (Internal quotation marks and emphasis omitted.) *Howard*, 374 Ill. App. 3d at 715. The court then distinguished the case from hypothetical facts not before the court. The court said, "Thus, had defendant here had legal title to the premises, Sherita would have had to get a court order prohibiting defendant's entry by extinguishing his possessory interest before he could have been charged with home invasion." *Howard*, 374 Ill. App. 3d at 715.

¶ 30     We find that the *dicta* misstate the legislative intent. The legislature made a court order a sufficient condition for finding a defendant guilty of home invasion despite an ownership interest. Nothing in the legislation itself and nothing in the legislative history makes a court order a necessary condition for finding home invasion despite an ownership interest. The spouse who retains possession of formerly shared property needs time to obtain the court order extinguishing the other spouse's ownership interest. In the case before us, Arrington had filed for divorce and a court scheduled proceedings on her divorce petition for the same day that Laurence invaded her

home. Under a literal application of the *dicta* in *Howard*, the spouse who retains possession would have no right to exclude the estranged spouse between the time of separation and the court's ruling on a petition for an order of the kinds listed in section 19-6(d). We hold that a spouse in possession of marital property may establish a right to exclude the estranged spouse without a court order under appropriate circumstances**.** See *Robbins*, 662 N.E.2d 213; *Hollenbeck*, 944 P.2d at 539-40.

¶ 31　　Laurence did not have clear legal title to the marital home on January 5, 2016. Because Laurence did not sign the lease, the landlord would face considerable difficulty if it sought to get rent from Laurence. See *1601 South Michigan Partners v. Measuron*, 271 Ill. App. 3d 415, 417 (1995). Laurence presented no evidence that Arrington acted as his agent when she signed the lease.

¶ 32　　The inclusion of Laurence's name printed on the lease as a second tenant makes this case similar to *State v. Singley*, 709 S.E.2d 603 (S.C. 2011). The trial court found Singley guilty of burglary. The South Carolina Supreme Court said,

"it appears Singley did have an undivided right to possess the home equal to that of his mother by virtue of his ownership interest in it. [Citations.] However, we believe that the mere holding of title to property is not dispositive of whether the owner can be convicted of burglarizing it.

*** [T]he concept of what is one's own home must be examined in light of the very purpose behind the law of burglary. The law of burglary is primarily designed to secure the sanctity of one's home, especially at nighttime, when peace, solitude and safety are most desired and expected ***. *** Therefore, our burglary laws protect an interest separate and apart from ownership: the right to be safe and secure in one's home. [Citations.] Thus the core of a dwelling constituting one's home for burglary purposes is the expectation of peace and

security therein. Mere ownership does not automatically confer this status on a person. That ownership interest must be examined in light of who possesses that expectation of sanctity in the dwelling.

Therefore, the proper test is whether, under the totality of the circumstances, a burglary defendant had custody and control of, and the right and expectation to be safe and secure in, the dwelling burglarized. *** If so, he is a person in lawful possession and cannot be convicted of burglary. If not, the jury must then determine whether the alleged victim had this interest and whether the defendant invaded it." *Singley*, 709 S.E.2d at 606.

¶ 33    *Robbins* lists appropriate factors for the court to consider when deciding whether a defendant has invaded a home to which he has some claim of legal title. Laurence contends that those factors weigh in his favor because Arrington had not obtained a divorce decree before he entered her home, his name appears on the lease, and he never acknowledged that he had no right to enter. We find that the pending divorce proceedings, Arrington's eviction of Laurence from the home, Laurence's residence elsewhere for six months, the changed locks, and Laurence's use of a brick to gain entry sufficiently supports the trial court's finding that Laurence invaded Arrington's home. The same evidence supports the conclusion that Laurence knew he was invading Arrington's home when he entered.

¶ 34                                B. Order of Protection

¶ 35    Laurence next contends that we should reverse the order of protection because the trial court failed to make statutorily required findings. Again, we review the issue of statutory interpretation *de novo*. *McFadden*, 2016 IL 117424, ¶ 26.

¶ 36   Section 214(c) of the Domestic Violence Act, concerning orders of protection, provides:

"(1) In determining whether to grant a specific remedy, other than payment of support, the court shall consider relevant factors, including but not limited to the following:

(i) the nature, frequency, severity, pattern and consequences of the respondent's past abuse, neglect or exploitation of the petitioner or any family or household member, including the concealment of his or her location in order to evade service of process or notice, and the likelihood of danger of future abuse, neglect, or exploitation to petitioner or any member of petitioner's or respondent's family or household; ***

\* \* \*

(3) *** [T]he court shall make its findings in an official record or in writing, and shall at a minimum set forth the following:

(i) That the court has considered the applicable relevant factors described in paragraphs (1) and (2) of this subsection.

(ii) Whether the conduct or actions of respondent, unless prohibited, will likely cause irreparable harm or continued abuse.

(iii) Whether it is necessary to grant the requested relief in order to protect petitioner or other alleged abused persons." 750 ILCS 60/214(c) (West 2016).

¶ 37　　　　Because the trial court did not comply with section 214, we reverse the order of protection and remand for further proceedings on the petition. See *People ex rel. Minteer v. Kozin*, 297 Ill. App. 3d 1038, 1043 (1998).

¶ 38　　　　　　　　　　　　　　C. Fines, Fees, and Costs

¶ 39　　　　Finally, Laurence objects to several of the fines, fees, and costs the trial court imposed as part of the sentence. Illinois Supreme Court Rule 472 (eff. May 17, 2019) now bars this court from granting Laurence the relief he seeks. Rule 472 provides:

　　　　　　"(a) In criminal cases, the circuit court retains jurisdiction to correct the following sentencing errors at any time following judgment and after notice to the parties ***:

　　　　　　　　(1) Errors in the imposition or calculation of fines, fees, assessments, or costs;

　　　　　　　　　　　　* * *

　　　　　　(c) No appeal may be taken by a party from a judgment of conviction on the ground of any sentencing error specified above unless such alleged error has first been raised in the circuit court." Ill. S. Ct. R. 472 (eff. May 17, 2019).

¶ 40　　　　Because the record does not show that the trial court addressed the alleged improprieties in the assessment of fines, fees, and costs, we cannot address the issue on this appeal. See *People v. Whittenburg*, 2019 IL App (1st) 163267, ¶ 6. We remand to the trial court to permit Laurence to file a motion to correct the fines, fees, and costs. See *People v. Williams*, 2020 IL App (1st) 163417, ¶ 93.

¶ 41                                    III. CONCLUSION

¶ 42          Under Illinois Rule of Evidence 803(15) (eff. Apr. 26, 2012), the store manager's testimony about the use Arrington and Laurence made of the lease sufficiently supports the admission of the lease into evidence, and the lease lists Laurence as a tenant for the Sauk Village home. However, the evidence that Arrington changed the locks to keep Laurence out of the home and that Laurence broke a window to gain entry against Arrington's wishes supports the conviction for home invasion. The trial court did not make the findings necessary for an order of protection. Rule 472 bars us from addressing Laurence's arguments regarding fines, fees, and costs. We affirm the conviction, deny the petition for rehearing, reverse the order of protection, and remand for further proceedings.

¶ 43          Affirmed in part, reversed in part, and remanded.

**No. 1-17-1399**

| | |
|---|---|
| **Cite as:** | *People v. Lawrence*, 2020 IL App (1st) 171399 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-2005; the Hon. Luciano Panici, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Erin Sostock, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Destinee M. Montalvo, and Kathryn A. Schierl, Assistant State's Attorneys, of counsel), for the People. |